[No. A047369. First Dist., Div. Three. Mar. 29, 1991.]

THE PEOPLE, Plaintiff and Appellant, v.
LINDA SHEPARD, Defendant and Respondent.

## COUNSEL

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Hubert F. Wilkinson and Ronald S. Matthias, Deputy Attorneys General, for Plaintiff and Appellant.

Edwin J. Wilson, Jr., and John P. Mortimer for Defendant and Respondent.

## OPINION

**MERRILL, J.**—After appellant Linda Shepard, as a public officer, was held to answer on the charges by a magistrate at the preliminary hearing, an information was filed alleging in counts I, II and IV, violations of Penal Code[1] section 424, subdivision 1, misappropriation of public moneys; in count III, a violation of section 424, subdivision 4, fraudulent falsification of public money account; in count V, a violation of section 424, subdivision 2, unauthorized use of public moneys; and in counts VI and VII, a violation of section 72.5, presentation of claim seeking public funds for reimbursement of political function costs.

Shepard filed a section 995 motion seeking to set aside all counts in the information. The superior court granted the motion with respect to counts I through VI and denied it as to count VII. During the proceedings, later the same day, on its own motion, the court vacated its ruling concerning count V, the unauthorized use of public moneys, and denied the section 995 motion as to this count. The People appeal from the order dismissing counts I through IV.[2, 3]

### FACTS

Shepard was a member of the Alameda-Contra Costa Transit District (hereinafter the District) Board of Directors. Counts I through IV pertain to a purported business trip Shepard took to St. Louis on August 14, 1987.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] While the People's notice of appeal includes a challenge to the dismissal of count VI, the People do not now contest the dismissal of this count.

[3] The People's notice of appeal also included reference to count V. However, the propriety of the trial court's ruling on count V is not properly before the court for review. The trial court ultimately denied the section 995 motion with respect to this count and the People may not appeal from this favorable ruling when the ruling is not challenged by Shepard. Shepard's stated position to this court is that the trial court "had the jurisdictional authority, while the parties were still before her, to correct the earlier ruling on count five, reinstating that count and denying defendant's motion to dismiss."

Evidence of the following facts was received at the preliminary hearing. A few weeks before the trip, Shepard met with District Secretary Lawrence Rosenberg at the District offices. Naomi Jean Stump, secretary to Rosenberg, was also present. Rosenberg asked Stump to ascertain whether a meeting of the American Public Transit Association (hereinafter APTA) was scheduled for mid-August in St. Louis. Rosenberg stated Shepard was under the impression that there was to be a meeting, but could not recall the details. From previous conversations with Shepard, Stump knew that Shepard's family was planning a reunion in St. Louis in August.

Stump informed Shepard that according to the APTA headquarters in Washington, D.C., no meeting was scheduled in St. Louis. Shepard then asked Stump to check with a Mr. Alexander of APTA who she stated had informed her there would be a meeting. Upon speaking with Alexander he informed Stump that there was no APTA meeting scheduled, but he had talked to a Mr. Ballard in St. Louis. Ballard was general manager for the Bi-State Transit System in St. Louis. Stump contacted Ballard and arrangements were made for a meeting between Shepard and Ballard for Friday, August 14, at 10 a.m. Stump discussed this scheduled meeting with Shepard and it was Stump's understanding that as part of this meeting Shepard would tour the St. Louis transit facilities. Stump made flight arrangements for Shepard to depart Thursday morning for St. Louis and return Sunday.

Prior to the trip, however, Shepard asked Stump to reschedule her departure date from Thursday to Friday, August 14. Shepard would now arrive in St. Louis at 9:28 p.m., Friday, which would be after the time originally scheduled for her meeting with Ballard. Stump cancelled the Friday meeting with Ballard, informing him that Shepard would contact him directly to reschedule. No hotel arrangements were made as Shepard indicated she would stay with her family. Stump then told Shepard that she had cancelled the Friday meeting and that she had informed Ballard that Shepard would contact him when she arrived in St. Louis.

Following Shepard's trip, on her behalf Stump prepared and submitted an expense report requesting a per diem reimbursement totalling $75 for three days in St. Louis. The District issued a check payable to Shepard for $75. Count I was premised on the District's payment of Shepard's air fare to and from St. Louis. Count III was based on Shepard's submission of the $75 per diem claim and count IV dealt with the District's payment of the per diem expense.

Additionally, Stump prepared and submitted Shepard's monthly directors fees and expenses schedule, claiming $524. District directors are paid $100 per meeting for participation in transit-related meetings up to a

maximum of $500 for any calendar month, plus incidental expenses. Shepard claimed $108 in connection with the St. Louis trip. While the District would ordinarily have issued Shepard a check for the $524, in this instance the amount was applied as a credit for an indebtedness for personal charges she made on the District's credit card account. Count II concerned the District's offset of the $108 toward the other indebtedness owed by Shepard to the District.

After her St. Louis trip, Shepard was recovering from surgery in the hospital when Stump and Rosenberg visited her. Stump asked her about the trip and Shepard replied that it was enjoyable and she was glad to see her family. She made no mention of Ballard or the St. Louis transit facilities. No oral or written report of a meeting or a facilities visitation was ever made to the District.

## DISCUSSION

■ The People contend that the superior court's order granting the section 995 motion as to counts I through IV must be reversed as the magistrate correctly ruled sufficient evidence was presented to demonstrate reasonable or probable cause that Shepard committed the offenses. We agree and reverse the order of dismissal with respect to these four counts.

■ In ruling on a section 995 motion to set aside the information, the trial court is "only to determine whether the magistrate, acting as a person of ordinary caution or prudence, could conscientiously entertain *a reasonable suspicion* that a public offense had been committed in which the defendant had participated. [Citation.] Neither the trial court in a Penal Code section 995 proceeding [citations] nor a reviewing court on appeal therefrom may substitute its judgment as to the weight of evidence for that of the committing magistrate. [Citations.] . . . Every legitimate inference that may be drawn from the evidence must be drawn in favor of the information [citation]." *(People v. Park* (1978) 87 Cal.App.3d 550, 561 [151 Cal.Rptr. 146].)

Viewing the evidence in light of these principles of review, we have determined the magistrate was not in error in finding that it appeared the charged offenses had been committed and there was sufficient cause to believe they had been committed by Shepard. ■ Our Supreme Court has reiterated on several occasions that "[t]hus the burden on the prosecution before the magistrate is quite distinct from that necessary to obtain a conviction before a judge or jury. 'Of course, the probable cause test is not identical with the test which controls a jury . . . . The jury must be convinced to a moral certainty and beyond a reasonable doubt of the existence

of the crime charged in the information and of every essential element of that crime. But a magistrate conducting a preliminary examination must be convinced of only such a state of facts as would lead a [person] of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. [Citations.] In other words, "Evidence that will justify a prosecution need not be sufficient to support a conviction . . . . *An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.* [Citations.]" ' (*Taylor* v. *Superior Court* (1970) 3 Cal.3d 578, 582 [91 Cal.Rptr. 275, 477 P.2d 131]; *Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197]; italics added.)" (*People* v. *Slaughter* (1984) 35 Cal.3d 629, 637 [200 Cal.Rptr. 448, 677 P.2d 854].)

Section 424, subdivision 1, as alleged in counts I, II, and IV, provides: "Each officer of this state, or of any county, city, town, or district of this state, and every other person charged with the receipt, safekeeping, transfer, or disbursement of public moneys, who either: [¶] 1. Without authority of law, appropriates the same, or any portion thereof, to his own use, or to the use of another . . . [¶] [i]s punishable by imprisonment in the state prison for two, three or four years, and is disqualified from holding any office in this state." Section 424, subdivision 4, as alleged in count IV, provides that the statute is violated by an official who "[f]raudulently alters, falsifies, conceals, destroys, or obliterates any such account[.]"

■ The evidence adduced at the preliminary hearing showed that Shepard's trip to St. Louis was made at a time when it was impossible for her to attend the sole business-related meeting she had scheduled. She had specifically requested a trip to St. Louis during mid-August of 1987 as that was the time her family was planning a reunion. The District paid for her air fare. She requested and received a per diem amount from the District for this trip. Additionally, she was credited for the amount she requested for the trip as a transit-related meeting. She gave no report of having attended any such meeting. An accepted purpose of a trip of this nature to meet with a representative of another transit agency is to provide input to the local district upon one's return. This did not happen in this case. Given such evidence, a magistrate could entertain a reasonable suspicion that Shepard's trip was personal in nature and that she violated section 424 as alleged in counts I through IV.

In granting the section 995 motion as to these counts, the trial court stated that insufficient evidence was presented to the magistrate that no authorized business was conducted during the trip. However, in our view, while it is conceivable that Shepard may still have had an appointment with

Ballard for a tour of the St. Louis facilities on a Saturday, no evidence to this effect was presented while persuasive evidence to the contrary was received. Furthermore, the superior court and this court must view the possibility of a contradictory inference from the evidence as inconsequential to the propriety of the magistrate's ruling. What is significant is that the magistrate had a sufficient basis from which to entertain a strong suspicion that the offenses were committed by Shepard.

The order is reversed insofar as it dismisses counts I, II, III and IV. In all other respects, the order is affirmed.

White, P. J., and Strankman, J., concurred.

A petition for a rehearing was denied April 29, 1991.