[No. B076587. Second Dist., Div. Three. Dec. 29, 1994.]

THE PEOPLE, Plaintiff and Appellant, v.
STEVEN EID et al., Defendants and Respondents.

COUNSEL

Gil Garcetti, District Attorney, Patrick D. Moran and Brent D. Riggs, Deputy District Attorneys, for Plaintiff and Appellant.

Flanagan, Booth & Unger, J. Michael Flanagan, Floyd J. Siegal, Sherman & Sherman and Victor Sherman for Defendants and Respondents.

OPINION

KLEIN, P. J.—The People appeal the Penal Code section 995 dismissal of an information filed against defendants and respondents Jason Sebastian von Marschner, John Mark Eltchi and Steven Eid (collectively, defendants) alleging various sexual offenses and attempted offenses perpetrated upon an unconscious victim.[1]

Specifically, the information alleged Eltchi had committed two counts of oral copulation of an unconscious victim, attempted rape of an unconscious victim, and three counts of genital penetration of an unconscious victim with a foreign object. (§§ 288a, subd. (f); 664/261, subd. (a)(4); 289, subd. (d).) In two of the penetration by foreign object counts, it was further alleged Eltchi personally had inflicted great bodily injury within the meaning of section 12022.8.

The information alleged the same offenses as to von Marschner, and additionally alleged von Marschner had committed one count of rape of an unconscious victim in which he personally had inflicted great bodily injury within the meaning of section 12022.7, and that he personally had inflicted great bodily injury in the commission of all three counts of penetration by a foreign object within the meaning of section 12022.8.

The information alleged Eid had committed two counts of genital penetration of an unconscious victim with a foreign object and one count of rape of an unconscious victim. (§§ 289, subd. (d); 261, subd. (a)(4).) Each count alleged Eid personally had inflicted great bodily injury within the meaning of section 12022.7 or 12022.8.

---

[1] All subsequent statutory references are to the Penal Code, unless otherwise specified.

## Summary Statement

At the preliminary hearing, the People presented the hearsay testimony of the detective who had investigated the matter. (§ 872, subd. (b).)[2]

The defendants sought to call the victim as a witness on the issue of consciousness at the time of the attack and to negate the great bodily injury allegations arising out of the victim's contraction of pelvic inflammatory disease, assertedly as a result of the attack.

The magistrate denied the request because the defense failed to make a sufficiently specific offer of proof pursuant to section 866, subdivision (a).[3] The superior court ruled the magistrate's refusal to allow the defense to call the victim constituted an abuse of discretion and dismissed the case.

We conclude the magistrate properly refused the defense request to call the victim and reverse the order of dismissal.

## Factual and Procedural Background

### 1. *The People's evidence.*

At the preliminary hearing the People presented the hearsay testimony of Los Angeles Police Detective Judy Jenkins.

### a. *Statements of victim and witnesses.*

Jenkins testified she first interviewed Heidi J., the 19-year-old victim in this case, on May 12, 1992. Heidi told Jenkins she had been walking home

---

[2] Section 872, subdivision (b), as amended by Proposition 115 effective June 5, 1990, provides: "Notwithstanding Section 1200 of the Evidence Code [(the hearsay rule)], the finding of probable cause may be based in whole or in part upon the sworn testimony of a law enforcement officer relating the statements of declarants made out of court offered for the truth of the matter asserted. Any law enforcement officer testifying as to hearsay statements shall either have five years of law enforcement experience or have completed a training course certified by the Commission on Peace Officer Standards and Training which includes training in the investigation and reporting of cases and testifying at preliminary hearings."

[3] Section 866, subdivision (a), as amended by Proposition 115, grants the magistrate discretion to limit a defendant's right to call witnesses at the preliminary hearing. It provides: "When the examination of witnesses on the part of the [P]eople is closed, any witness the defendant may produce shall be sworn and examined. [¶] *Upon the request of the prosecuting attorney, the magistrate shall require an offer of proof from the defense as to the testimony expected from the witness.* The magistrate shall not permit the testimony of any defense witness unless the offer of proof discloses to the satisfaction of the magistrate, in his or her sound discretion, that the testimony of the witness, if believed, would be reasonably likely to establish an affirmative defense, negate an element of a crime charged, or impeach the testimony of a prosecution witness or the statement of a declarant testified to by a prosecution witness." (Italics added.)

about 3 p.m. on the afternoon of May 11, 1992, when Eltchi called to her from in front of the von Marschner home on Avenue 64 in Pasadena where there was a party in progress. Heidi did not know Eltchi but she walked over to the party.

After Heidi consumed "a couple of beers or so" Eltchi asked if she would have sex with him. She said she would not. Eltchi then asked "if she had considered having sex with two guys or more, and she said that she'd never do that, [because] . . . she had a boyfriend . . . ." Eltchi asked her several times to have sex with him "and she specifically told him no."

Heidi also "took a hit off [a marijuana cigarette]." "[A]fter she took the hit of marijuana, she just kind of passed out. She didn't recall much of anything after that." "She remembered being helped through a window, and she remembered someone penetrating her vaginal area, and she said she remembered three or four people being involved with that penetration, just kind of pawing at her, being on top of her."

Heidi also recalled seeing flashes of light as if someone was photographing her. Heidi said "[s]he never consented to having sex with anyone there, and she had no intentions of having sex with anyone at that party or any time during that day."

When Heidi awoke at approximately 11 p.m. she asked von Marschner "who was the person that [had been] there on top of her . . . ." von Marschner gave Heidi his phone number and said they would talk.

Von Marschner telephoned Heidi's father who picked her up. When Heidi arrived home, her vaginal area was sore, she could barely walk, and her underwear was missing. Her father took her to the hospital.

Jenkins spoke with Heidi again at the police station on the next day. As Heidi left the police station, she passed out and was rushed to the emergency room. Heidi was examined by Dr. Luna who told Jenkins he had seen Heidi the previous night.

On the second examination, Luna found "quite a bit of bruising, and he said that it was quite substantial, and that it confirmed his original diagnosis that a sexual assault had occurred." Luna "described the sexual assault as brutal, and that a person would not just normally subject themselves to these types of injuries." Luna told Jenkins Heidi's injuries were "in the top 25 percent of the wors[t] case injuries that he had ever seen."

Heidi was admitted to the hospital on June 19, 1992, and was discharged on June 25. Dr. Al-Sarraf, Heidi's attending physician, told Jenkins Heidi

had a severe infection known as pelvic inflammatory disease (PID) which had been treated with antibiotics and, in Al-Sarraf's opinion, was related to the sexual assault.

Heidi told Jenkins she had had intercourse only once prior to this incident.

Although von Marschner, Eltchi and Eid told Jenkins Heidi had passed out, Heidi used the term "pasted out." Jenkins testified she asked Heidi "what it meant, and she said that she passed out."[4]

b. *Statements of the defendants.*

Jenkins separately interviewed each of the defendants on May 12, 1992. Each of the defendants was advised of and waived his rights per *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. The magistrate considered these statements only as to the declarant.

(1) *Von Marschner's statement.*

Von Marschner told Jenkins that on May 11 Eltchi called Heidi over to von Marschner's house and offered her a beer which she accepted. She and Eltchi spoke for some time.

Von Marschner later found Eltchi and Heidi on his bed "making out." Von Marschner tried to give them privacy but when he saw Eltchi kissing Heidi's body, he "did the same." Von Marschner told Jenkins he penetrated Heidi with his fingers and that they orally copulated each other. Von Marschner said "she threw up, and that she was quite drunk. He said that she was not combative." Von Marschner claimed Heidi willingly participated in these acts. He "tried to penetrate her, but he couldn't, because he could not get an erection, because he was too drunk."

Von Marschner also told Jenkins Heidi "had passed out" and "that once two people got involved in the incident, that he knew that there was no control, that he felt that it wasn't right."

Von Marschner told Jenkins at some point Eltchi telephoned Eid. When Eid arrived he " 'got undressed after seeing [Heidi], told her she had thrown up on her blouse, and proceeded to take off her blouse.' " Eltchi and Eid videotaped Heidi and Eid took photographs of her. Eid put on a condom, and "penetrated Heidi's vagina with his penis." At that point Heidi cried out and told Eid to stop. Eid took Heidi's underwear and said he was going to keep it.

---

[4]The superior court amended the preliminary hearing transcript in accordance with corrections submitted by the parties.

Von Marschner erased the videotape because "it looked pretty bad. It looked like they had raped her."

On cross-examination, Jenkins admitted von Marschner told her he had erased the videotape, in part, because it showed them doing things to Heidi, not Heidi doing things to them.

### (2) *Eltchi's statement.*

Eltchi told Jenkins that Heidi accepted a beer and agreed to have sex with him. Eltchi said he asked Heidi about having sex with more than one guy "and she didn't say yes, and she didn't say no." Eltchi and Heidi entered von Marschner's bedroom through the window where. they engaged in what Eltchi described as an "oral feast." Eltchi tried to penetrate Heidi but could not.

Eltchi admitted they engaged in mutual oral copulation, that he penetrated Heidi's vagina with his finger, and that von Marschner also was involved in the sexual activity. Eltchi claimed the video they took of Heidi after Eid arrived would show her voluntarily engaging in sexual acts. Eltchi recalled Heidi "got really sick and started throwing up, and . . . they were all on her, and once she made an indication, no more, no more, they all stopped . . . ."

### (3) *Eid's statement.*

Eid told Jenkins he arrived at von Marschner's home at approximately 8 p.m. Eltchi told Eid he was doing a "double pen," which meant double penetration. Eid at first videotaped the activity but then became involved. Heidi orally copulated him and, while they were watching the videotape he had made, she rubbed his leg. Eid put on a condom and penetrated her.

When Heidi began to cry, he dressed and left. Eid took snapshots of Heidi and took her underwear as a momento. Eid admitted penetrating Heidi with his finger, and that she orally copulated him. Heidi appeared sober throughout the incident and they stopped immediately when she said no more. As he left, von Marschner and Heidi "started to make out again."

## 2. *Defense evidence.*

Dhia Al-Sarraf, M.D., testified he admitted Heidi to the hospital on June 19, 1992, to treat acute bilateral PID, a sexually transmitted disease usually caused by intercourse with an individual infected with gonorrhea or chlamydia. Heidi's PID possibly had been caused by the sexual contact in this case.

PID develops within a few days or a few weeks of the exposure. PID can be, but is not likely to be, caused by bacterial infection from an individual who does not have a sexually transmitted disease.

### 3. *The defense attempt to call Heidi as a witness.*

The defendants attempted to call Heidi as a witness at the preliminary hearing. Pursuant to section 866, subdivision (a), the prosecutor requested an offer of proof from the defense as to the testimony expected of the witness. (See fn. 3, *ante.*) Although Heidi had refused to speak to defense investigators, defense counsel advised the magistrate they expected she would admit the PID had been caused by other sexual contact and that she had not been unconscious at the time of the alleged sexual assaults.

Defense counsel stated: "We have information from medical reports to indicate that this [PID] was a pre-existing condition, and other medical testimony indicating that it could not possibly have resulted from this particular incident . . . . We also have information from prior medical reports that the victim was abused by the father. [¶] . . . [W]e want to be able to call the father and potentially Heidi . . . for the purpose of establishing that she had a pre-existing medical condition which was not a result of this particular incident."

Later in the proceedings, the parties again addressed the issue. The defense asserted, based upon the defense investigation of the case and interviews with other individuals who had been present at the party, "it's clear that Heidi consented to what went on here, and we believe that under oath she will tell the truth."

The defense proffered they believed Heidi would admit she "was not unconscious, that she voluntarily went into the room, that she was making out in the front yard with one or more of the boys in question. . . . [I]f she tells the truth, [she] will definitely negate the elements of the crime, in fact, the entire crime."

Defense counsel stated: "I have statements from two other witnesses who were present at the time outside the von Marschner home, in which they observed Heidi's demeanor, her willingness to participate, her kissing of the boys, her voluntarily going into the house through the window, things of that nature. So we have independent witnesses and statements from these witnesses saying that she did these things all voluntarily. She was flirting, and she was a fool and she was not drunk, she was not falling down, she was not unconscious. So we have specific people who have informed us, and that's

what we're basing the offer of proof on, that she did these things, contrary to what she allegedly told the police in this case."

The defense also relied on Heidi's assertedly ambiguous statements to Jenkins in that she allegedly had passed out for seven to eight hours after consuming only a few beers and one or two hits from a marijuana cigarette. Additionally, they argued an unconscious person cannot climb through a window.

The magistrate ruled the defense had not made an adequate offer of proof. The magistrate stated "an offer of proof has to be that I have spoken with this witness, and she told me X, Y and Z, and she will take the witness stand and say X, Y, and Z. [¶] Now that's an offer of proof."

When defense counsel offered to provide the trial court with in camera statements of witnesses, the magistrate suggested calling a third party percipient witness is "different than calling Heidi." In later discussions with counsel, the magistrate advised the defense they need not have spoken personally with Heidi, and suggested by way of example, a hearsay report of an admission by Heidi that her statement to Jenkins was false would suffice. "[Y]ou must come before the court and give me some reason to believe that the complaining witness will, in fact, change her story. And I have no reason to believe that that will be the case, and under [Evidence Code section] 352, I'm obligated to exclude testimony if it will take an undue consumption of time . . . . [W]ithout some assurance that this complainant will retract what she said to the officer, it would be a fishing expedition, it would be speculative, and it could be undue [consumption] of time."

After further discussion, the magistrate asked counsel what the defense offer of proof would be with respect to prior sexual activity. Counsel responded, "The offer of proof . . . is, that if she says she had unprotected sexual intercourse, and you apply the medical tests, you may disbelieve Heidi and throw this entire case out."

The magistrate stated: "I specifically asked you what specifically will she say, and it's always if she says this way, and if it's this way, it will be that." The magistrate concluded the defense had not made a proper offer of proof and disallowed the request to call Heidi as a witness.

4. *The magistrate's finding of probable cause.*

The magistrate found probable cause to hold the defendants to answer based upon Jenkins's testimony.

5. *The superior court's ruling.*

Each of the defendants sought dismissal on the ground they had not been legally committed. The superior court found the magistrate had failed to exercise sound discretion in denying the request to call Heidi as a witness and dismissed the information.

### Contentions

The People contend the magistrate properly concluded the defense had failed to make an offer of proof sufficient to warrant calling Heidi as a witness.

### Discussion

1. *Standard of review.*

■ Upon review of a motion to set aside an information, this court disregards the superior court's ruling and directly examines that of the magistrate. (*People* v. *Shepard* (1991) 228 Cal.App.3d 1410, 1414 [279 Cal.Rptr. 551].) We, like the superior court, must draw every legitimate inference in favor of the magistrate's ruling and cannot substitute our judgment on the credibility of witnesses or weight of the evidence. (*People* v. *Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278]; *People* v. *Woods* (1993) 12 Cal.App.4th 1139, 1147-1148 [15 Cal.Rptr.2d 906].)

2. *The magistrate's denial of the defendants' request to call Heidi as a witness did not constitute an abuse of discretion.*

a. *Proposition 115 impact.*

Proposition 115 has "considerably narrowed" the purpose of preliminary hearings in this state. (*Whitman* v. *Superior Court* (1991) 54 Cal.3d 1063, 1080 [2 Cal.Rptr.2d 160, 820 P.2d 262].) It added section 30, subdivision (b), to article I of the *state Constitution* (section 30(b)) which states: "*In order to protect victims and witnesses in criminal cases,* hearsay evidence shall be admissible at preliminary hearings, as prescribed by the Legislature or by the people through the initiative process." (Italics added.)

Proposition 115 amended section 872, subdivision (b), to permit a probable cause determination based on hearsay statements of a qualified police officer (see fn. 2, *ante*). Proposition 115 also enacted Evidence Code section

1203.1 which created a preliminary hearing exception to the general require-ment that all hearsay declarants be made available for cross-examination. (*Whitman* v. *Superior Court, supra*, 54 Cal.3d at p. 1070.)

Section 866, subdivision (a), also as amended by Proposition 115, restricts the right of the accused to call a witness at the preliminary hearing. Upon a request by the prosecutor, the magistrate is required to obtain "an offer of proof from the defense as to the testimony expected from the witness." (§ 866, subd. (a).) "The magistrate shall not permit the testimony of any defense witness unless the offer of proof discloses to the satisfaction of the magistrate, in his or her sound discretion, that the testimony of the witness, if believed, would be reasonably likely to establish an affirmative defense, negate an element of a crime charged, or impeach the testimony of a prosecution witness or the statement of a declarant testified to by a prose-cution witness." (§ 866, subd. (a).)

With these provisions in mind, we address the magistrate's ruling.

b. *The defendants' offer of proof was inadequate.*

 Here, the prosecutor requested an offer of proof from the defense pursuant to section 866, subdivision (a), in the first instance, but the defense offer was inadequate.

Initially, we note that if Heidi had testified the incident was consensual as the defense asserted she would, an affirmative defense would have been established. Similarly, although the great bodily injury enhancement was based on Heidi's severe injuries as well as her contraction of PID, had Heidi admitted a preexisting condition of PID, the great bodily injury allegation would have been undermined. However, the defense failed to make an offer of proof which demonstrated Heidi would have so testified.

 Generally, in order to preserve any evidentiary point for appellate review, the proponent of the evidence must make an offer of proof regarding the anticipated testimony or ask questions which presage the expected response. (See *People* v. *Whitt* (1990) 51 Cal.3d 620, 648 [274 Cal.Rptr. 252, 798 P.2d 849]; Evid. Code, § 354, subd. (a).) Failure to make an adequate offer of proof precludes consideration of the alleged error on appeal. (*Pugh* v. *See's Candies, Inc.* (1988) 203 Cal.App.3d 743, 758 [250 Cal.Rptr. 195].)

The substance of evidence in a valid offer of proof must be attributed to the testimony of specific witnesses, writings, material objects, or other things presented to the senses, to be introduced to prove the existence or

nonexistence of a fact in issue. (*In re Mark C.* (1992) 7 Cal.App.4th 433, 444 [8 Cal.Rptr.2d 856]; *McCleery* v. *City of Bakersfield* (1985) 170 Cal.App.3d 1059, 1074 [216 Cal.Rptr. 852]; *United Sav. & Loan Assn.* v. *Reeder Dev. Corp.* (1976) 57 Cal.App.3d 282, 294 [129 Cal.Rptr. 113].) But an offer of proof sufficient to preserve an evidentiary point for review does not necessarily entail the *specificity* demanded by section 866, subdivision (a). ▮ Thus, in one respect, the defendants made a sufficient offer of proof in that they preserved the propriety of the magistrate's ruling for review. Upon examination, however, the offer of proof was based on nothing more than optimistic expectation Heidi would admit her statements to Jenkins were false. That offer was insufficient to warrant cross-examination of her at the preliminary hearing under section 866, subdivision (a).

Here, although the defense claimed numerous independent witnesses would contradict Heidi's account of the incident, none of these witnesses was named and none was called to testify. Moreover, even taking the defense offer to produce further statements in camera at face value, the magistrate, in the exercise of its discretion, found the defense had produced nothing more than an expectation Heidi would retract her statements to Jenkins.

Thus, the defendants failed to demonstrate a purpose for Heidi's testimony within section 866, subdivision (a), that outweighed the public policy of protecting victims of crime.[5, 6]

---

[5]Similar strict showings are required in other contexts.

Under *Franks* v. *Delaware* (1978) 438 U.S. 154, 155-156 [57 L.Ed.2d 667, 671-672, 98 S.Ct. 2674], a defendant may challenge the veracity of the affidavit underlying a facially valid search warrant based on official misconduct only upon a substantial preliminary showing the affiant has made false statements and the affidavit's remaining contentions are insufficient to justify a finding of probable cause.

The attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. (*Franks* v. *Delaware, supra,* 438 U.S. at p. 171 [57 L.Ed.2d at pp. 681-682].) Self-serving denials of the offenses charged, without more, are insufficient. (*People* v. *Box* (1993) 14 Cal.App.4th 177, 185 [17 Cal.Rptr.2d 504]; *People* v. *Sandlin* (1991) 230 Cal.App.3d 1310, 1318 [281 Cal.Rptr. 702]; *People* v. *Duval* (1990) 221 Cal.App.3d 1105, 1113 [271 Cal.Rptr. 240]; cf. *U.S.* v. *Johns* (9th Cir. 1988) 851 F.2d 1131, 1134 [affidavits of two experts averring the allegations of the affidavit were scientifically impossible, plus denials by defendants sufficient to trigger hearing]; see also *People* v. *Luttenberger* (1990) 50 Cal.3d 1, 22 [265 Cal.Rptr. 690, 784 P.2d 633] [defendant must offer evidence casting some reasonable doubt regarding either the existence of an informant or the truthfulness of the affiant's report before a court is required to conduct in camera review or order discovery relating to a warrant affidavit].)

[6]We therefore need not address the People's further claim that, to the extent the defense sought to attack Heidi's credibility with evidence of her past sexual conduct, they failed to file a written motion supported by an affidavit stating the offer of proof. (*People* v. *Jordan* (1983) 142 Cal.App.3d 628, 631 [191 Cal.Rptr. 218]; Evid. Code, § 782.)

c. *The magistrate's ruling did not violate the defendants' alleged constitutional right to examine Heidi as a hostile witness.*

■ Von Marschner and Eid contend the refusal to allow Heidi's testimony violated their *constitutional right* to confront and to examine her on the issue of consciousness which was an element of each offense charged. Eid asserts a specific offer of proof is not required for a hostile witness. In this argument, they are, in effect, attacking the constitutionality of section 866, subdivision (a).

This claim lacks merit.

In the first instance, other than the probable cause hearing held to justify the continued detention of the accused, ". . . there exists no federal constitutional right to a preliminary hearing to determine whether a case should proceed to trial." (*Whitman* v. *Superior Court, supra,* 54 Cal.3d at pp. 1078-1079.)

Additionally, "[t]he right to confrontation is basically a *trial* right." (*Barber* v. *Page* (1968) 390 U.S. 719, 725 [20 L.Ed.2d 255, 260, 88 S.Ct. 1318], italics added; *Whitman* v. *Superior Court, supra,* 54 Cal.3d at p. 1079.) It "includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness. A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial." (*Barber* v. *Page, supra,* 390 U.S. at p. 725 [20 L.Ed.2d at p. 260]; *Whitman* v. *Superior Court, supra,* at p. 1079.)

The requirements of the confrontation clause of the Sixth Amendment are satisfied as long as the defendant is "assured of full and effective cross-examination at the time of trial." (*California* v. *Green* (1970) 399 U.S. 149, 159 [26 L.Ed.2d 489, 497, 90 S.Ct. 1930].)

We therefore find no violation of the right to confront and cross-examine in the magistrate's refusal to allow the defendants to call Heidi as a witness at the preliminary hearing. (See *Whitman* v. *Superior Court, supra,* 54 Cal.3d at pp. 1075-1082.)

### d. *Section 866, subdivision (a), is not unconstitutional as violative of article I, section 28, subdivision (d).*[7]

█ Eltchi contends section 866, subdivision (a), is unconstitutional because it potentially excludes relevant evidence from a criminal proceeding in violation of article I, section 28(d), in that the testimony of the alleged victim of a charged crime must be seen as relevant to the determination of probable cause.

This claim lacks merit.

Although the preliminary hearing previously had been recognized as an opportunity for discovery and trial preparation (see *Whitman* v. *Superior Court, supra,* 54 Cal.3d at p. 1081; *People* v. *Superior Court (Mendella)* (1983) 33 Cal.3d 754, 759 [191 Cal.Rptr. 1, 661 P.2d 1081]), after Proposition 115 "the purpose of a preliminary examination [is] to establish whether there exists probable cause to believe that the defendant has committed a felony. The examination shall not be used for purposes of discovery." (§ 866, subd. (b).)

Proposition 115 thus substantially altered the nature and purpose of a preliminary hearing in this state. (*Whitman* v. *Superior Court, supra,* 54 Cal.3d at p. 1080.) The express purpose of Proposition 115 as set forth in subdivision (c) of section 1 is: "[T]o restore balance to our criminal justice system, to create a system in which justice is swift and fair, and to create a system in which violent criminals receive just punishment, in which crime victims and witnesses are treated with care and respect, and in which society as a whole can be free from the fear of crime in our homes, neighborhoods, and schools."

The combined constitutional and statutory provisions of Proposition 115 seek to protect victims and witnesses, streamline criminal procedure, and limit the preliminary hearing to a determination of probable cause. In order to achieve these legitimate purposes, the probable cause determination now may be based on hearsay declarations and a defendant's opportunity to cross-examine the hearsay declarant has been restricted. Section 866, subdivision (a), requires the magistrate, upon a request by the prosecutor, to seek from the defense an offer of proof showing the relevance of the anticipated

---

[7]Section 28, subdivision (d), of article I of the California Constitution (article I, section 28(d)), adopted as part of Proposition 8, provides in pertinent part: "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, *relevant evidence shall not be excluded in any criminal proceeding . . . .* Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code, Sections 352, 782 or 1103." (Italics added.)

testimony before the defense may call a witness at the preliminary hearing. The section vests in the magistrate discretion to limit the accused's right to call witnesses at the preliminary hearing and, in effect, defines relevant evidence as testimony which "would be reasonably likely to establish an affirmative defense, negate an element of a crime charged, or impeach the testimony of a prosecution witness or the statement of a declarant testified to by a prosecution witness." (§ 866, subd. (a).)

Given these pronouncements and by reason of the constitutional and statutory changes brought about by Proposition 115, the scope of relevant defense evidence at the preliminary hearing has been substantially narrowed. Evidence that falls outside the statutory parameters of section 866, subdivision (a), is irrelevant.

As so construed, section 866, subdivision (a), does not exclude relevant evidence and does not impermissibly conflict with article I, section 28(d).

3. *Sufficient evidence supports the magistrate's finding of probable cause.*

█ Eltchi contends the evidence was insufficient to demonstrate Heidi was unconscious and that Eltchi was aware of that fact at the time of the charged offenses.

This claim is meritless.

The issues before a magistrate on preliminary hearing are whether a public offense has been committed and whether there is probable cause to believe the defendant is guilty thereof. (§§ 871, 872, subd. (a).)

The evidence presented by the People clearly met that standard.

## Conclusion

As modified by Proposition 115, preliminary hearings are now limited to establishing probable cause only; therefore, the scope of that proceeding dictates what is relevant. Discovery is no longer permissible. Section 866, subdivision (a), allows for a broad introduction of evidence, both by the prosecution and the defense. However, the defendants failed to make an offer of proof sufficient to warrant allowing them to cross-examine the victim at the preliminary hearing pursuant to section 866, subdivision (a). Because the accuseds were not illegally committed, the order of dismissal must be set aside.

## Disposition

The order of dismissal is reversed.

Croskey, J., and Kitching, J., concurred.

A petition for a rehearing was denied January 30, 1995, and respondents' petitions for review by the Supreme Court were denied April 12, 1995. Mosk, J., was of the opinion that the petitions should be granted.