Filed 6/28/13  In re N.S. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re N.S., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>P.A.,<br><br>        Defendant and Appellant. | E057130<br><br>(Super.Ct.No. SWJ010026)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Donna L. Crandall, Judge.  (Retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Pamela J. Walls, County Counsel, and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

P.A. (Father) appeals the order terminating his parental rights to his son, N.S., on the grounds the juvenile court failed to comply with the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) requirements.[1]

## I. PROCEDURAL BACKGROUND AND FACTS

On May 12, 2010, the Riverside County Department of Public Social Services (the Department) filed a Welfare and Institutions Code section 300 petition as to N.S.[2] N.S. was three months old and Father was listed as being unknown. The mother denied having Native American heritage.[3] Finding that a prima facie showing was made that N.S. came within Welfare and Institutions Code section 300, subdivisions (b) and (g), the court detained the child.

The jurisdiction/disposition report identified Father as an alleged father, noting: "There is no information regarding American Indian ancestry as to the alleged father, [P.A.], as his whereabouts are unknown and he could not be interviewed." On June 21, 2010, the social worker met with Father's sister,[4] who indicated that she had no knowledge as to his current whereabouts. She indicated that he was a "'fugitive as he has

---

[1] Father filed a petition for writ of habeas corpus on this issue (case No. E058901), which will be considered with this appeal. We will resolve that petition by separate order.

[2] Although the petition also included M.S., she has a different father and is not a party to this appeal. Thus, she will be referenced only if necessary.

[3] The mother is not a party to this appeal and will be referenced only if necessary.

[4] Father and his sister share the same parents.

2

violated his probation in Orange County.'" Father's sister stated that she had informed Father of the birth of N.S., but "he showed no interest and stated that he would not participate in any paternity testing." She described Father as "'a dead beat dad' who does not care or support his children."

A fourth amended petition was filed on September 14, 2010, which identified Father as the alleged father of N.S., noting he "is currently incarcerated." At the contested jurisdiction/disposition hearing that same day, Father was represented by counsel, and his sister was present. Father requested paternity testing. His attorney informed the court that she had sent all of the necessary forms, including Judicial Council form ICWA-020 (Parental Notification of Indian Status), to Father, who had returned only the waiver form. The attorney had also spoken with Father. The court removed N.S. from the custody of his alleged father, continued placement outside the home, and denied reunification services to Father. The court also ordered a paternity test for Father.

The Department discovered that on November 30, 2010, Father was transferred to Arizona State Prison—Lewis Stiner Unit, and a court order was required to collect a specimen for paternity testing. On December 20, the order was issued, and the specimen collected confirmed that Father is the biological father of N.S. Father was convicted of theft and had an anticipated release date of August 11, 2013. On January 21, 2011, Father informed the court that he had a few relatives he wanted the court to consider for placement. In a letter dated January 26, the social worker asked that Father "provide . . . any contact information for relatives . . . who may be able to supervise visits between [him] and [N.S.]." Father never contacted the social worker.

3

At the six-month review hearing on March 15, 2011, Father was represented by counsel and appeared telephonically. The Addendum Report included Recommendations (Attachment A) wherein the box next to "ICWA does not apply as to the children" was checked. The court noted that the orders and findings were submitted to the court on Attachment A filed on March 2, with a second report filed on March 8. Father was present via telephonic appearance. The court found that "ICWA does not apply." Neither Father nor his counsel objected. Thus, the court concluded that N.S. was not an Indian child.

At the 12-month review hearing on September 14, 2011, Father was represented by counsel and appeared telephonically. His paternal aunt was also present. Father submitted, and, at the mother's request, a contested hearing was set. Father appeared telephonically at the October 24, 2011, hearing. Father's counsel submitted and requested that Father receive photos of N.S. along with updates as to how the child is doing. The trial court terminated services to the mother and set a section 366.26 hearing. The court ordered the Department to send photographs and updates of N.S. to Father. Father was not having visits out of state in state prison, and when asked if he had anything else for the court, Father replied, "No, sir."

At the contested section 366.26 hearing on February 21, 2012, Father was present telephonically and represented by counsel. The Department requested a continuance for the purpose of completing the adoption assessment regarding N.S. Father's counsel noted that Father was not receiving photos and updates on his child. Counsel also stated: "[F]ather doesn't understand why he cannot have placement of the child. I understand

4

he's incarcerated. However, he would like to see the child placed in his custody legally and he can make arrangements for relatives to care for the child, and that would be his request." The court denied Father's request on the grounds there was "no legal basis at this point for [the court] to grant custody to an incarcerated prisoner." The court went on to state: "That is certainly detrimental and not in the best interest of the child. [Father] is not in a position to take the child or make decisions for the child since he is incarcerated." The matter was continued.

On July 16, 2012, Father appeared telephonically. His counsel offered no objection to the Department's evidence, or any affirmative evidence; however, counsel argued that "[F]ather is still renewing his request to have placement of the child and be allowed to voluntarily place with his wife, who lives in Arizona and is the mother of his three children. He also voiced concern because there was a prior order for him to be able to have updates and photographs of the child, and that has never occurred in this matter. Father argued the sibling relationship exception applied; however, if the court did not agree and terminated his parental rights, he asked that he continue to receive pictures and updates, and that the prospective adoptive family allow "some form of contact with the other siblings in Arizona." The court terminated all parental rights. Father appeals.

II. DID THE TRIAL COURT FAIL TO ENSURE THAT THE DEPARTMENT

COMPLIED WITH THE INQUIRY AND NOTICE REQUIREMENTS

OF ICWA AND RELATED CALIFORNIA LAW?

Father contends the court and the Department erred by failing to fulfill their duty of inquiry for ICWA purposes. Assuming we conclude that such finding was implied, he further contends there was insufficient evidence to support the finding.

## A. Applicable Law

ICWA was enacted "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families . . . ." (25 U.S.C. § 1902.) In general, ICWA applies to any state court proceeding involving the foster care or adoptive placement of, or the termination of parental rights to, a Native American child. (25 U.S.C. §§ 1903(1), 1911(a)-(c), 1912-1918, 1920-1921.) Under the notice provision of ICWA, if the court "knows or has reason to know that an Indian child is involved," the social services agency must "notify . . . the Indian child's tribe . . . of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a).)

California Rules of Court, rule 5.481(a),[5] which was in effect at the time of the termination of parental rights in 2012, provided that the court and the county welfare department have "an affirmative and continuing duty to inquire whether a child is or may be an Indian child in all proceedings identified in rule 5.480[ (i.e., a petition under Welfare and Institutions Code section 300)]." (Former rule 5.481(a).) Former rule

---

[5] All further rule references are to the California Rules of Court unless otherwise indicated.

5.481(a)(1) provided that the Department "must ask . . . the parents . . . whether the child is or may be an Indian child and must complete the *Indian Child Inquiry Attachment* (form ICWA-010(A)) and attach it to the petition, . . ." Former rule 5.481(a)(2) provided that "At the first appearance by a parent . . . in any dependency case . . . the court must order the parent . . . to complete *Parental Notification of Indian Status* (form ICWA-020)." Former rule 5.481(a)(3) provided: "If the parent . . . is unavailable at the initiation of a proceeding, the court must order the person or entity that has the inquiry duty under this rule to use reasonable diligence to find and inform the parent . . . that the court has ordered the parent . . . to complete *Parental Notification of Indian Status* (form ICWA-020)."

## B. Analysis

According to the record before us, the Department fulfilled its duty of inquiry as to the mother; however, there is no evidence that the Department directly inquired of Father as to his Native American heritage. Rather, on September 14, 2010, prior to the genetic testing to confirm that Father was the biological father of N.S., Father's counsel volunteered that she had sent Father "all the paperwork, the JV-190, the Indian questionnaire, the mailing address form, and a paternity questionnaire." Father never returned the Indian questionnaire. Nonetheless, by the time Father's paternity of N.S. was confirmed and he telephonically appeared in court along with his counsel, the Department had prepared an Addendum Report, which included Recommendations (Attachment A) wherein the box next to "ICWA does not apply as to the children" was checked. The court noted that the orders and findings were submitted to the court on

7

Attachment A filed on March 2, with a second report filed on March 8. Father was present via telephonic appearance The court found that "ICWA does not apply." Neither Father nor his counsel objected. Thus, the court concluded that N.S. was not an Indian child.

This court has previously held in *In re S.B.* (2005) 130 Cal.App.4th 1148, 1160-1161 (*In re S.B.*), that such affirmative statements in the social workers' reports and the lack of checkmarks in the appropriate boxes in the dependency petitions are sufficient evidence that the social services agency did ask the parents about their Native American heritage. As in *In re S.B.*, here the Department's report noted that ICWA did not apply. Thus, "it is fairly inferable that the social worker did make the necessary inquiry." (*In re S.B.*, *supra*, at p. 1161.) Moreover, this case resembles *In re Aaliyah G.* (2003) 109 Cal.App.4th 939, which is cited in *In re S.B.* at page 1160, where it states: "There, the petition application was marked 'No' to indicate that the child did not have Indian heritage. All subsequent reports stated that the ICWA did not apply. [Citation.] On appeal, the father argued that the juvenile court and the social services agency had 'failed to satisfy their affirmative duty to inquire as to ICWA's applicability.' [Citation.] The appellate court disagreed: 'Checking the "No" box suggests that an inquiry as to Aaliyah's heritage was made. There is no indication to the contrary. The court had no obligation to make a further or additional inquiry absent any information or suggestion that the child might have Indian heritage.' [Citation.] It concluded: 'Based on the record, there is sufficient evidence that an inquiry was made as to whether Aaliyah is an Indian child,' [Citation.]" (*Id.* at pp. 1160-1161.)

Notwithstanding the above, even if we were to assume that there was a failure to make the necessary inquiries, we cannot conclude that Father was prejudiced. The source of the duty of inquiry is former rule 5.481, not ICWA. "[A]ny failure to comply with a higher state standard, above and beyond what the ICWA itself requires, must be held harmless unless the appellant can show a reasonable probability that he or she would have enjoyed a more favorable result in the absence of the error. [Citations.]" (*In re S.B.*, *supra*, 130 Cal.App.4th at p. 1162.)

Here, there is absolutely nothing in the record to suggest that, if the social worker or the juvenile court had inquired, Father would have reported any Native American ancestry. We note Father's sister was aware of the dependency action from its inception. In addition to attending the August 4, 2010, hearing, the record shows that she "had a CPS case 6 years ago but that she was successfully reunited with her children . . . ." Nonetheless, she never stepped forward to proclaim any Indian ancestry on behalf of her and Father. Father was sent the form ICWA-020, was represented by counsel, and telephonically appeared at the March 15, 2011, hearing when the court noted that the orders and findings were being submitted to the court, including the checked box that ICWA did not apply. Attachment A specifically stated that ICWA did not apply. Yet, neither Father nor his counsel raised any issue. Instead, on appeal he requests this court to take judicial notice of his declaration dated December 22, 2012, which states: "To the best of my knowledge, I believe to have 1/4 of Cherokee Indian heritage." He added: "I do not recall anybody asking me of my heritage at the trial level." We grant his request for judicial notice, although we consider the declaration for the limited purpose of

demonstrating the offer of proof, and not for the truth of the statements contained therein. (Cf. *Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 807, fn. 5.) Father's mere "belief" of having Indian ancestry is an insufficient offer of proof or affirmative representation that, had he been asked, he would have been able to proffer some Indian connection sufficient to invoke the ICWA. (*People v. Eid* (1994) 31 Cal.App.4th 114, 126-127 ["The substance of evidence in a valid offer of proof must be attributed to the testimony of specific witnesses, writings, material objects, or other things presented to the senses, to be introduced to prove the existence or nonexistence of a fact in the issue. [Citations.]"].)

As we have previously stated: "In the absence of such a representation, the matter amounts to nothing more than trifling with the courts. [Citation.] The knowledge of any Indian connection is a matter wholly within the appealing parent's knowledge and disclosure is a matter entirely within the parent's present control. The ICWA is not a 'get out of jail free' card dealt to parents of non-Indian children, allowing them to avoid a termination order by withholding secret knowledge, keeping an extra ace up their sleeves. Parents cannot spring the matter for the first time on appeal without at least showing their hands. Parents unable to reunify with their children have already caused the children serious harm; the rules do not permit them to cause additional unwarranted delay and hardship, without any showing whatsoever that the interests protected by the ICWA are implicated in any way." (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1431.)

Accordingly, on this record, even if we were to reverse and remand with directions to make the requisite inquiry, there is no reason to suppose the outcome would be any

10

different.  The only result would be waste and delay if we were to relieve the Father of his burden to show a reasonable probability of a more favorable result in the absence of the error.  "The burden on an appealing parent to make an affirmative representation of Indian heritage is de minimis.  In the absence of such a representation, there can be no prejudice and no miscarriage of justice requiring reversal."  (*In re Rebecca R.*, *supra*, 143 Cal.App.4th at p. 1431.)

Father's remedy, should he have some evidence that the child does indeed have some Native American ancestry, is to file a concurrent petition for writ of habeas corpus, alleging (under penalty of perjury; see Pen. Code, § 1475) facts, not mere beliefs, sufficient to show prejudice.  (See *In re Darlice C*. (2003) 105 Cal.App.4th 459, 464-466.)

### III.  DISPOSITION

The juvenile court's order terminating Father's parental rights is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
J.

We concur:


RAMIREZ
P.J.

RICHLI
J.

11