[No. F016711. Fifth Dist. Mar. 16, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD ALAN BOX, Defendant and Appellant.

## Counsel

André P. Gaston, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Edmund D. McMurray and Doris A. Calandra, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**VARTABEDIAN, Acting P. J.**—Appellant Donald Alan Box raises the narrow issue of whether the trial court erred in failing to permit an evidentiary hearing in accordance with *Franks* v. *Delaware* (1978) 438 U.S. 154 [57 L.Ed.2d 667, 98 S.Ct. 2674]. We conclude appellant failed to make a substantial showing of deliberate or reckless falsification by law enforcement in the search warrant affidavit, and therefore no further hearing was required. We affirm the judgment.

### General Background

On November 30, 1990, acting pursuant to the search warrant at issue in this case, law enforcement officers raided a residence located on Copper

Avenue in a rural part of the Clovis area of Fresno County. The officers recovered chemicals and glassware related to production of methamphetamine and written instructions for production of the drug. Appellant and others were at the residence at the time of the raid, and they were arrested.

A jury found appellant guilty of conspiracy to manufacture methamphetamine. (Pen. Code, § 182; Health & Saf. Code, § 11379.6.) The court found true four prior-prison-term allegations. (Pen. Code, § 667.5, subd. (b).) Appellant was sentenced to prison for nine years.

### The Search Warrant

Leaving aside portions of the search warrant affidavit concerning the experience and qualifications of the affiant officer, the affidavit contains the following information: In September 1990, officers served a search warrant at 3905 East Copper, as part of an effort to locate parts of a stolen pickup truck. The search produced "various articles tending to establish that the vehicle possibly was dissasembled [*sic*] at that residence." Gerald Burns and Pamela Johnson were arrested at the time of that search. Both have criminal records that include arrests for narcotics violations.

In November 1990, affiant and two parole officers conducted a parole search at a residence on Tollhouse Road in Clovis. Larry Azlin and Arthur Yeramian were arrested in connection with that search. Azlin possessed a coin purse that contained methamphetamine. Part of the methamphetamine was a pasty substance identified by a state criminalist as "close to or directly from a clandestine methamphetamine laboratory . . . ."

On November 27, 1990, Yeramian's parole agent interviewed him at the jail. Yeramian knew someone called "Weasel," and Yeramian was of "the opinion that Weasel was a methamphetamine user and purchaser of meth and a cooker or manufacturer of methamphetamine." Weasel and another man (later identified as Gerald Burns) were setting up a clandestine methamphetamine laboratory. Weasel drove a yellow Camaro. About November 18, 1990, Yeramian had been at the house on Copper Avenue and had seen glass beakers, vials, chemical glassware and hot plates. Yeramian also said the officers had missed a bucket of chemicals used in methamphetamine production when they searched the Tollhouse residence. He described the place where the bucket was hidden.

On November 28, 1990, the affiant and others returned to the Tollhouse residence. They found Azlin there, and they found the bucket of chemicals described by Yeramian. The criminalist "though[t] the substance was a[n]

acid or ammonia based product which could be associated with the clandestine chemical manufacture of methamphetamine."

The parole agent also interviewed Azlin on November 28, 1990. The bucket of chemicals appeared at the residence about the same time Gerald Burns started coming to the residence. Azlin commented that Burns was "cooking." Burns had lost his job and was in desperate need of money.

Affiant determined that "Weasel" was appellant, and that appellant, Burns, and Johnson all had outstanding arrest warrants. Appellant had a history of manufacturing methamphetamine and had an outstanding warrant for parole violations.

Affiant interviewed Yeramian again on November 28, 1990. Yeramian identified appellant as "Weasel" when shown appellant's photograph. Yeramian gave affiant a telephone number at which appellant could be contacted; this turned out to be Burns's telephone number. Yeramian added that he bought methamphetamine from Burns when at the Copper Avenue residence on November 18, and that appellant and Burns told him at that time they were "about to start manufacturing methamphetamine."

On November 29, 1990, affiant saw a yellow Camaro parked at the Copper Avenue residence. The affidavit was dated November 29, 1990, and the search warrant was issued on that date.

Appellant and his codefendants filed various motions to traverse the affidavit, quash the search warrant, and suppress evidence seized during the search. These motions were supported by the transcript of a deposition of Yeramian and a transcribed tape recording of an interview of Azlin.

In his deposition of February 27, 1991, Yeramian admitted talking to the search warrant affiant and the parole officer. He admitted he identified a picture of Weasel. He denied telling the officers where Weasel lived. He denied telling them Weasel used, bought, manufactured or trafficked in methamphetamine. He disavowed making a deal with the parole officer. He denied telling them Weasel drove a yellow Camaro, though he admitted he knew that fact. He denied telling them he had been at the house where Weasel stayed, though he admitted he had been there. Later, Yeramian said he "could have" told the officers he had been at Weasel's house. He denied giving the officers Weasel's telephone number, though he admitted he knew the number in question as Burns's. He claimed he had not seen any laboratory supplies at the house, and denied telling the officers he had. He denied knowing there was a bucket of chemicals at the other residence, and disavowed telling the officers that. He also denied reiterating his statements

about Weasel on February 7, 1991, in an interview with the officers while Yeramian was in custody on the parole violation, although he admitted he had met with them on that date.

Azlin was interviewed by a defense investigator on March 6, 1991. A transcript purporting to reflect that interview was submitted with the traversal motions. Azlin acknowledged that the interview was being recorded and that he was acting freely and without duress in giving the interview. Azlin denied he ever told the officers the black bucket appeared at the same time Burns came to the house. He disavowed telling the officers Burns was "cooking" or manufacturing narcotics. Additionally, he claimed he did not tell the officers Burns was in desperate financial condition in November 1990.

The court held a preliminary hearing on the traversal motions pursuant to *Franks* v. *Delaware, supra,* 438 U.S. 134. The court impliedly determined that, for purposes of appellant's required prima facie showing under *Franks,* discussed fully below, appellant had made a substantial showing of falsehood as to all of Yeramian's statements inculpatory of appellant and the codefendants, except as to the statement that Yeramian said he had bought methamphetamine from Burns. It impliedly found that Azlin's interview did not constitute reliable evidence of falsehood, and declined to strike Azlin's statements as reported in the search warrant affidavit. The court concluded that the affidavit, as redacted in accordance with its view of appellant's preliminary showing, still established probable cause for the search warrant. Accordingly, the court denied the motion to traverse the affidavit.

### DISCUSSION

 Although this appeal raises only the narrow question whether the trial court was compelled to grant appellant an evidentiary hearing on his motion to traverse, there are several interrelated components. First, appellant says the court erroneously failed to strike from the affidavit Yeramian's claim that he bought methamphetamine from Burns. He argues that either this claim was adequately challenged by Yeramian's deposition denial that he told the officers Burns was "trafficking" in drugs, or else he should have been permitted to clear up any evidentiary deficit by calling Yeramian as a witness at the hearing. Second, he asserts Azlin's interview transcript was a sufficient showing to require preliminary redaction of Azlin's statements in the warrant affidavit. Third, without Yeramian's and Azlin's statements, the affidavit fails to establish probable cause.

Respondent argues the court properly permitted Yeramian's claim that he bought drugs from Burns to remain in the affidavit. In the alternative,

respondent says this statement was not necessary to the probable cause determination. Respondent also claims Azlin's statements properly were retained in the affidavit for purposes of preliminary testing under *Franks*, and with those statements included, the affidavit establishes probable cause.

■ *Franks* v. *Delaware*, *supra*, 438 U.S. 154, governs challenges to search warrant affidavits in California courts. (*People* v. *Luttenberger* (1990) 50 Cal.3d 1, 11 [265 Cal.Rptr. 690, 784 P.2d 633].)

"In [*Franks* v. *Delaware*, *supra*, 438 U.S. 154] the United States Supreme Court held a defendant has a limited right under the Fourth Amendment to challenge the veracity of the affidavit underlying a facially valid search warrant. [Citations.] To obtain a *Franks* postsearch evidentiary hearing on whether there has been official misconduct in drafting the affidavit, the defendant must make 'a "substantial preliminary showing that (1) the affiant has made statements which were deliberately false or in reckless disregard of the truth and (2) the affidavit's remaining content after [its] false statements are excised is insufficient to justify a finding of probable cause. [Citation.]" ' (*People* v. *Glance* (1989) 209 Cal.App.3d 836, 846 . . . .) If the allegations are proven by a preponderance of the evidence at the hearing, the false material must be removed. If the remaining content is insufficient to establish probable cause, the evidence seized under the warrant must be excluded. [Citations.]" (*People* v. *Sandlin* (1991) 230 Cal.App.3d 1310, 1316 [281 Cal.Rptr. 702].)

■ The preliminary *Franks* hearing involves evaluation of the defendant's uncontested evidence to determine whether that evidence constitutes a "substantial showing." This is a question of law, not of fact, and is subject to de novo review. (See *People* v. *Leyba* (1981) 29 Cal.3d 591, 597 [174 Cal.Rptr. 867, 629 P.2d 961].) More specifically, the trial court's determination whether to hold an evidentiary hearing is reviewed de novo on appeal. (*People* v. *Sandlin*, *supra*, 230 Cal.App.3d at p. 1316; *U.S.* v. *Johns* (9th Cir. 1988) 851 F.2d 1131, 1133.)

*The Azlin Interview*

■ *Franks* v. *Delaware*, *supra*, 438 U.S. at page 171 [57 L.Ed.2d at page 682], requires that a defendant's evidence in support of his claim of official wrongdoing must consist of "[a]ffidavits or sworn or otherwise reliable statements of witnesses . . . , or their absence satisfactorily explained." ■ The transcript of the Azlin interview does not fulfill this requirement.

We recognize that a tape recording of an interview, duly transcribed, provides a more reliable account of the interview than would an investigator's summary or report on the interview. However, this is not the sort of reliability *Franks* seeks.

■ Instead, the reliability requirement seeks to establish some likelihood that the witness will testify at a subsequent evidentiary hearing in a manner that impeaches the warrant affidavit. In particular, the proof offered must reliably challenge the truthfulness of the affiant, not that of the informant. (*People* v. *Sandlin, supra,* 230 Cal.App.3d at p. 1317.)

■ In the present case, there is no explanation whatsoever concerning the necessity of using Azlin's unsworn statement. This deficiency is brought into stark contrast by the fact that defense attorneys were able to conduct their "interview" of Yeramian under oath and before a court reporter. Given the "presumption of validity with respect to the affidavit supporting the search warrant" (*Franks* v. *Delaware, supra,* 438 U.S at p. 171 [57 L.Ed.2d at p. 682]), we draw negative inferences concerning the statement's reliability from the absence of any explanation of the necessity for the format of the Azlin statement. (See *State* v. *Van Sickle* (Me. 1990) 580 A.2d 691, 693 [unsworn interviews with law enforcement officers].) In particular, we infer that this unsworn statement was the most Azlin was willing to give the defense; that he was unwilling to repeat his claims under oath. Such reluctance bodes ill for the chances that Azlin would either appear at a hearing or repeat his allegations under oath if forced to attend such a hearing. Accordingly, we conclude the Azlin statement did not constitute a reliable showing of intentional or reckless falsehood on the part of law enforcement concerning statements attributed to Azlin in the warrant affidavit.

### The Yeramian Deposition

A different problem is presented by the Yeramian deposition. The deposition was given under oath, and Yeramian was present at the preliminary *Franks* hearing, willing to testify. In the formal sense, the statement may be viewed as reliable.

Because we review the preliminary *Franks* hearing de novo and find the appellant's proof was insufficient to require an evidentiary hearing, we need not attempt to reconcile the trial court's leaving in the affidavit Yeramian's statement he bought drugs from Burns with striking the remainder of Yeramian's statements to officers as impeached by Yeramian's deposition testimony. We note that, for purposes of supporting a search warrant for a methamphetamine laboratory, the claim that Yeramian bought drugs from Burns is only probative to the extent one infers this was not an isolated transaction. To that same extent, "selling" methamphetamine falls into the broader category of "trafficking" in methamphetamine.

Nevertheless, we are not persuaded that Yeramian's deposition testimony is "reliable" or constitutes a "substantial preliminary showing" of any deliberate or reckless falsehood on the part of law enforcement (*Franks* v.

*Delaware, supra,* 438 U.S. at p. 155 [57 L.Ed.2d at p. 672]) so as to require an evidentiary hearing. The problem is that the reliability of the *affiant officer's statements* concerning what Yeramian told him is overwhelmingly established by reference to the many details confirmed before and during the search. (See *People* v. *Duval* (1990) 221 Cal.App.3d 1105, 1113 [271 Cal.Rptr. 240].) Appellant's presence at Burns's house, the car appellant drove, Burns's financial need, the presence of lab materials at the Copper Avenue residence, the presence of the bucket of chemicals at the Tollhouse residence, appellant's past association with the manufacture of methamphetamine, appellant's parole status, and the identity of appellant's female companion all corroborated the statements attributed to Yeramian in the search warrant affidavit.

In contrast, appellant failed to make any showing whatsoever of any other source from which the officers might have gathered all of this detailed information at the time the affidavit was written. Appellant failed to show any possible motivation for the officers to attribute this information to someone with Yeramian's criminal record and with no history of past reliability as an informer. To the contrary, the deposition transcript itself showed ample reason why Yeramian may have been motivated to falsely claim he had not made the reported statements.

In *People* v. *Sandlin, supra,* 230 Cal.App.3d 1310, the court rejected a somewhat similar showing by the defendants. In that case the warrant affidavit described a parking lot drug transaction witnessed by an unnamed informer. One of the defendants' affidavits denied in detail the possibility that such an event occurred, both because she did not operate in the reported manner and because the described events were physically impossible in the particular parking lot. The defendants also alleged that the informant was an off-duty police officer who was engaged to a friend of the defendants; the parking lot story was fabricated as some sort of cover up.

The *Sandlin* court rejected the defendants' showing as "little more than self-serving general denials [that] fall far short of the substantial showing requirement of *Franks.*" (*People* v. *Sandlin, supra,* 230 Cal.App.3d at p. 1318.) If anything, the showing in the present case is weaker than in the *Sandlin* case, since in that case the defendants at least provided a proposed motivation for the alleged police misconduct.

In *U.S.* v. *Johns, supra,* 851 F.2d 1131, the court held the defendant was entitled to a *Franks* hearing. There, the defendant presented affidavits from expert chemists who said it was impossible that affiant had smelled the odor he said he smelled near a storage locker. In that case, however, the officer's

claim was not corroborated by a significant body of evidence, as it is here, and the discovered materials themselves added an element of corroboration or reliability to the experts' sworn statements.

The right to traverse a search warrant affidavit provided by *Franks* v. *Delaware, supra,* 438 U.S. 154, is an important element of judicial implementation of the Fourth Amendment. Although the *Franks* court left to the states "the framing of suitable rules to govern proffers" at these preliminary hearings, it would be inappropriate to establish impossibly high criteria for the preliminary showing. (Compare *People* v. *Duval, supra,* 221 Cal.App.3d at p. 1113 ["we do not hold that the sole testimony of a defendant would, in every case, be insufficient to meet the preliminary showing required by *Franks*"].) In the present case, however, the high level of external corroboration of Yeramian's statements in the search warrant affidavit, and the complete absence of motivation for the police to choose such an unreliable individual if they were fabricating an informer, lead us to conclude that Yeramian's deposition testimony did not constitute a sufficient showing of deliberate or reckless police misconduct to require an evidentiary hearing pursuant to *Franks*.

### DISPOSITION

The judgment is affirmed.

Thaxter, J., and Buckley, J., concurred.

A petition for a rehearing was denied April 1, 1993, and appellant's petition for review by the Supreme Court was denied June 10, 1993.