[No. C031137. Third Dist. Nov. 30, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL CARUTHERS BENJAMIN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.B, and parts II.C(3), II.C(4), and II.C(5).

## COUNSEL

David W. Dratman for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, J. Robert Jibson and Janine R. Busch, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

.**KOLKEY, J.**—After the trial court denied defendant's motion to suppress (Pen. Code, § 1538.5) and for an evidentiary hearing pursuant to *Franks v. Delaware* (1978) 438 U.S. 154 [98 S.Ct. 2674, 57 L.Ed.2d 667] (hereinafter *Franks*), defendant entered a negotiated plea of no contest to possession of marijuana for sale (Health & Saf. Code, § 11359) and cultivation of marijuana (Health & Saf. Code, § 11358) in exchange for a grant of probation.

Defendant now appeals, contending that he made a showing sufficient to require an evidentiary hearing pursuant to *Franks, supra,* 438 U.S. 154. In *Franks,* the United States Supreme Court held that the Fourth Amendment requires that a hearing be held where a defendant makes a substantial preliminary showing that a false statement, necessary to the finding of

probable cause, was made knowingly and intentionally, or with reckless disregard for the truth, by the affiant in the search warrant affidavit. We disagree that the defendant made the requisite showing under *Franks* in this case. In the published portion of this opinion, we conclude, among other things, that although the probable cause for a search cannot be supported by the results of the search, the results can properly be used to support the truthfulness of the statements in the search warrant affidavit where their veracity has been attacked in connection with a motion for an evidentiary hearing under *Franks*. Accordingly, we shall affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 16, 1998, Sacramento County Detective Allen Geoffroy submitted his affidavit in support of a request for a warrant to search defendant's residence in Sacramento.

Detective Geoffroy stated in his affidavit as follows:

About 9:00 p.m. on January 15, "1997,"[1] he and other Sacramento County police officers went to defendant's house in response to complaints that the residents therein "were possibly growing marijuana." The windows of the home were covered so there was "no visual access." As Officers Maneggie, Simpson, Schindler, and Sandoval approached the front door and were approximately 20 feet from the residence, "they could smell a strong odor of fresh marijuana emanating from the residence." "[A]ll four officers [had thorough] knowledge about marijuana and its odors."

Before they could get to the door, the defendant came out of the house. Officer Simpson requested permission to talk to him inside the house, but defendant declined and spoke with the officers outside. As the officers stood approximately 25 feet from the house, the "[o]fficers continued to smell a strong odor of fresh marijuana emanating from the residence" and "the odor was not coming from [defendant]." When questioned about the house, defendant was "evasive" and could not "explain the reason for the strong odor of fresh marijuana coming from his residence."

According to the affidavit, the "[o]fficers" also spoke with a neighbor, Thomas Bowman. Bowman explained that "during [the] last few months they ha[d] smelled strong odors coming from the [defendant's] residence . . . and at times it was a chemical smell." Another neighbor, Tina Nicholas, claimed that "during the last week she had smelled a strong odor of

---

[1]The affidavit states "1997," but the trial court concluded that this was a typographical error. The correct year was 1998.

marijuana coming from the [defendant's] residence . . . , and at times the smell was so strong it made her nauseous."

The affidavit further recites that officers compared the electrical meter at defendant's residence with the meters at 2420 and 2408 19th Street and the meter at the business on the corner of Broadway and 19th Street. The electrical usage at defendant's residence was "at least twice that of the other locations checked."

Detective Geoffroy also stated in his affidavit that he checked defendant's criminal history and learned that on September 29, 1997, defendant had been arrested at his residence for violation of Health and Safety Code section 11358. The police report for that incident reflected that on that date at 8:36 a.m., officers had responded to Geraldine Bowman's complaint of a strong chemical odor emanating from the residence. Officers went into Bowman's backyard and could see marijuana plants in the greenhouse in defendant's backyard. A search incident to defendant's arrest revealed 8.7 grams of marijuana inside the house and one marijuana plant in the greenhouse. Defendant was convicted of violating Health and Safety Code section 11357.

Opining that defendant was actively involved in the cultivation of marijuana and its distribution, Detective Geoffroy, a peace officer since June 1978, set forth his training and/or experience in interviewing and arresting people under the influence of drugs and/or alcohol, and in the investigation of indoor and outdoor marijuana growing operations.

The search warrant for defendant's residence was issued on January 16, 1998, and a night search was approved.

At the preliminary hearing, the following facts were established: The warrant was served at 1:13 a.m. on January 16, 1998. In the defendant's basement, which was divided into three rooms, officers found 18 four-foot-tall marijuana plants in five-gallon containers, 28 marijuana saplings, 1,000-watt grow lamps or lights with hoods, drip irrigation piping ready to be assembled, reflective papered walls, a potting shelf and pots, indoor climate controllers with digital timers, a 50-gallon drum, and exhaust fans. The room with the 18 plants had an exhaust fan that vented to the outside; the sapling room had an exhaust fan that vented through the chimney. Access to the basement was either through a door outside the house or through a hatch located in the floor of a closet adjoining two bedrooms. The search also revealed about 12 grams of marijuana in a drawer in the master bedroom and marijuana residue in a plate atop a dresser in the other bedroom/office as well as an Ohaus brand scale.

Defendant moved to suppress the evidence. He contended that the affidavit contained material misstatements and omissions of fact made intentionally or with reckless disregard for the truth, without which there could be no probable cause for the issuance of the warrant. Defendant claimed the following statements in the affidavit were false:

(1) that the officers could smell a strong odor of fresh marijuana emanating from the residence and not from the defendant;

(2) that the defendant could not explain why a fresh marijuana odor was coming from his house;

(3) that Thomas Bowman told the officers that he smelled strong odors coming from defendant's residence and that at times it was a chemical smell;

(4) that Tina Nicholas smelled a strong odor of marijuana coming from the defendant's residence during the last week and that it was so strong it made her nauseous; and

(5) that officers compared the electrical meter at defendant's house with electrical meters of the houses located at 2420 and 2408 19th Street and of the business located at the corner of Broadway and 19th Street.

Defendant also challenged the date (1997) as a typographical error, a false statement, or stale information.

Defendant's primary challenge, however, was to the officers' assertions that they could smell a strong odor of fresh marijuana coming from the residence, and not from the defendant. Defendant submitted his declaration, wherein he stated that he did not smell a "strong odor of marijuana from [his] residence." He admitted growing the marijuana in his basement, but claimed the 18 plants were in "the adult vegetative stage," had not "sexed yet[,] and had not sprouted marijuana buds." Defendant also claimed that he did not smell a strong odor of marijuana emanating from any of the plants. Defendant stated that when he confronted the officers at his door, one of them stated, "you reek dude"—in conflict with the assertion in Detective Geoffroy's affidavit that the officers confirmed that the odor was not coming from the defendant. Defendant also claimed at no time "prior to requesting [his] consent to search the premises was [he] ever told or asked to explain the reason for a strong odor of fresh marijuana" coming from his house— which conflicted with Detective Geoffroy's statement to the contrary.

Defendant also submitted the declaration of William Logan, an attorney, who claimed an expertise relating to marijuana and its cultivation. "[B]ased

on [his] review of [written materials and a view of the premises]," Logan opined that Detective Geoffroy's statement that the officers could smell a strong odor of fresh marijuana was false. In a subsequent declaration, Logan stated the basis for his opinion: "[T]he marijuana was grown in rooms which were sealed to the outside of the house (no doors, windows or other immediate access). The only immediate access was a trap door through the interior of the rooms accessed via the interior of the house. The air in these rooms was vented to the outside via ducts through the chimney. The only fan with a physical connection to the outside air was drawing air into the room and did not expel air outside the room. The marijuana plants were in a vegetative state of growth meaning that they did not have the physical structures to a significant extent that contained the aromatic hydrocarbons which produce odor. I have viewed photographs of approximately 28 clones and I am informed that these clones were growing in hooded containers at the time that law enforcement officers made their observations before obtaining a search warrant. In addition, the weather conditions at the time indicate rain and damp conditions had occurred within the previous 24 hours, which would cause any smell coming out of the top of the chimney to be neutralized or dissipated before it reached the ground."

The trial court denied defendant's motion for a *Franks* hearing, concluding that he had failed to make a substantial showing (1) that the affidavit contained statements that were deliberately false or were made in reckless disregard of the truth, and (2) that the affidavit, after the allegedly false statements were excised, was insufficient to justify a finding of probable cause.

With respect to the defense expert's opinion asserting the falsity of the affidavit's statement concerning the smell of fresh marijuana emanating from defendant's residence, the court found that the "issue of [the] smell of marijuana" was "kind of an individual issue."

## II. DISCUSSION

### A

■ "The trial court's decision to not hold a *Franks* hearing is reviewed de novo on appeal. [Citation.]" (*People v. Sandlin* (1991) 230 Cal.App.3d 1310, 1316 [281 Cal.Rptr. 702], cert. den. *sub nom. Sandlin v. California* (1992) 502 U.S. 1058 [112 S.Ct. 936, 117 L.Ed.2d 107].) ■ In performing our de novo review, we keep in mind the following principles: "[A] defendant may challenge the veracity of statements contained in an affidavit of probable cause made in support of the issuance of a search warrant. When

presented with such a challenge, the lower court must conduct an evidentiary hearing if a defendant makes a substantial showing that: (1) the affidavit contains statements that are deliberately false or were made in reckless disregard of the truth and (2) the affidavit's remaining contents, after the false statements are excised, are insufficient to justify a finding of probable cause. At the evidentiary hearing, if the statements are proved by a preponderance of the evidence to be false or reckless, they must be considered excised. If the remaining contents of the affidavit are insufficient to establish probable cause, the warrant must be voided and any evidence seized pursuant to that warrant must be suppressed. [Citation.]" (*People v. Bradford* (1997) 15 Cal.4th 1229, 1297 [65 Cal.Rptr.2d 145, 939 P.2d 259] (hereinafter *Bradford*), cert. den. *sub nom. Bradford v. California* (1998) 523 U.S. 1118 [118 S.Ct. 1796, 140 L.Ed.2d 937], citing *Franks*.)

However, innocent or negligent misstatements will not defeat a warrant. (*Franks, supra,* 438 U.S. at pp. 154-155, 171 [98 S.Ct. 2675-2676, 2684] 57 L.Ed.2d at pp. 672-673, 681-682].)

Moreover, "there is a presumption of validity with respect to the affidavit. To merit an evidentiary hearing[,] the defendant['s] attack on the affidavit must be more than conclusory and must be supported by more than a mere desire to cross-examine. . . . The motion for an evidentiary hearing must be 'accompanied by an offer of proof . . . [and] should be accompanied by a statement of supporting reasons. Affidavits or otherwise reliable statements of witnesses should be furnished,' or an explanation of their absence given. [Citation.]" (*People v. Sandlin, supra,* 230 Cal.App.3d at p. 1316, quoting *Franks, supra,* 438 U.S. at p. 171 [98 S.Ct. at p. 2684].)

"Mere conclusory contradictions of the affiant's statements are insufficient for the 'substantial preliminary showing' *Franks* requires." (*People v. Sandlin, supra,* 230 Cal.App.3d at p. 1318.)

### B*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### C

Defendant asserts that he made an adequate showing that Detective Geoffroy's statements in his affidavit were deliberately false or made in reckless disregard for the truth in connection with the following subjects: (1) "the officers' perception of an odor of marijuana emanating from [the] residence," (2) "the neighbors' perception of a toxic odor and/or an odor of

*See footnote, *ante,* page 264.

marijuana emanating from [defendant's] residence," and (3) "the comparably high level of electricity consumption at [defendant's] residence." Defendant does not dispute the other factual basis for probable cause—defendant's prior conviction for a violation of Health and Safety Code section 11357.

(1)

■ Odors may constitute probable cause if the magistrate "finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance." (*Johnson v. United States* (1948) 333 U.S. 10, 13 [68 S.Ct. 367, 369, 92 L.Ed. 436, 440]; see also *People v. Cook* (1975) 13 Cal.3d 663, 668 [119 Cal.Rptr. 500, 532 P.2d 148]; *People v. Gale* (1973) 9 Cal.3d 788, 794 [108 Cal.Rptr. 852, 511 P.2d 1204]; *U.S. v. DeLeon* (9th Cir. 1992) 979 F.2d 761, 765; *United States v. Pond* (2d Cir. 1975) 523 F.2d 210, 212.) The "strong aroma of fresh marijuana" can establish probable cause to believe contraband is present. (*People v. Cook, supra,* 13 Cal.3d at p. 668.)

■ Defendant first contends that Detective Geoffroy's affidavit is inaccurate because it stated that the four officers smelled the marijuana (which defendant disputes was possible), but failed to state whether Detective Geoffroy could smell it: "The omission of Detective Geoffroy in the instant case to indicate whether he was able to smell marijuana at [defendant's] residence is just as telling as the omission in [*U.S. v. Jacobs* (8th Cir. 1993) 986 F.2d 1231]."[2]

Defendant's reliance on *U.S. v. Jacobs, supra,* 986 F.2d 1231, is misplaced. In *Jacobs,* a drug-sniffing dog was placed in a room with several packages, one of which officers believed contained narcotics. The dog expressed an interest in the package, but its actions did not amount to an official "alert" to the package so as to allow the dog's handler to be certain that the package contained drugs. In the warrant application, the officer stated that the dog expressed an interest in the package, but failed to state that the dog did not give a full "alert" to the package. The *Jacobs* court stated that a reckless disregard may be inferred from the omission of information when the omitted material would be clearly critical to the finding of probable cause, and concluded that the omission in that case was made at least with reckless disregard for the truth. (*Id.* at pp. 1234-1235.)

Thus, in *Jacobs,* the omitted fact was necessary to avoid misleading the court with respect to an assertion critical to a finding of probable cause.

---

[2]Defendant miscites the case as *United States v. Jones,* but his citation (986 F.2d 1231 ) and rendition of the facts clearly show that he meant to refer to *U.S. v. Jacobs.*

In contrast, here, whether Detective Geoffroy could also smell the marijuana was not critical to the finding of probable cause and did not make misleading his assertion that the four officers said that they did smell it. Detective Geoffroy never stated in his affidavit that he approached the residence. Instead, he said that he and the other officers went to defendant's residence "in response to complaints," but that the "*officers* approached the front of the residence" and "could smell a strong odor of fresh marijuana" and that the "*officers* approached the front porch and front door" where they were met by defendant. (Italics added.) The affidavit does not state where Detective Geoffroy was situated when "the officers" approached the front of the residence. Accordingly, there is no showing of an omission critical to a finding of probable cause.

(2)

 Defendant's next—and principal—claim is that he "made an adequate showing that no officers could have smelled marijuana emanating from his residence," based on his and his expert's (Logan's) declarations.

 "Allegations that statements reported in the affidavit and made to the affiant are false are not sufficient to satisfy the requirements for a *Franks* hearing unless the defendant contends that the affiant has misrepresented the statements made by another." (*United States v. Perdomo* (9th Cir. 1986) 800 F.2d 916, 921.) However, the " 'police [cannot] insulate one officer's deliberate misstatement merely by relaying it through an officer-affiant personally ignorant of its falsity.' " (*Bradford, supra,* 15 Cal.4th at p. 1300, quoting *Franks, supra,* 438 U.S. at pp. 163-164, fn. 6 [98 S.Ct. at p. 2680].)

 Here, the wording of defendant's declaration precludes a claim that Detective Geoffroy's assertion concerning the officers' perception of marijuana odor was false—let alone intentionally or recklessly false. First, defendant does not assert in his declaration that he could not smell any odor of fresh marijuana coming from his house, but that he "did not smell a *strong* odor of marijuana from [his] residence." (Italics added.) Second, defendant's contention that an officer said to him "you reek dude" at least acknowledges that the officers did perceive an odor outside—although defendant's position is that it was only coming from him directly and not from his house. In any event, self-serving denials alone—such as those in defendant's declaration—are routinely discounted in determining whether a showing for a *Franks* hearing has been made out. (*People v. Eid* (1994) 31 Cal.App.4th 114, 127, fn. 5 [36 Cal.Rptr.2d 835]; *People v. Box* (1993) 14 Cal.App.4th 177, 184-186 [17 Cal.Rptr.2d 504]; *People v. Sandlin, supra,* 230 Cal.App.3d at p. 1318.)

Mr. Logan's expert opinion that no such smell would have emanated from defendant's house is also entitled to little weight. First, defendant's expert, Mr. Logan, was an attorney, not a scientist. Second, Mr. Logan's opinion of the absence of marijuana odor on that night was expressly based on his review of written materials—and a view of defendant's residence at some undisclosed time during the seven-month period between the date of the January 1998 search and the date (July 31, 1998) that he signed his declaration. There is no basis for ascertaining whether the conditions at the residence, on which he relied, were the same as those extant at the time the officers reported the odors. Third, Mr. Logan stated that "the weather conditions at the time indicate rain and damp conditions had occurred within the previous 24 hours, which could cause any smell coming out of the top of the chimney to be neutralized or dissipated before it reached the ground." This assertion thereby concedes that a smell could have come from the chimney (the evidence was that an exhaust fan in the sapling room vented the air into the chimney), but that the weather could have neutralized it. However, Mr. Logan's evaluation of the effect of the weather upon marijuana odor seven months earlier is entitled to no weight since he was not qualified to offer such an opinion. Fourth, Mr. Logan stated that "the marijuana plants were in a vegetative state of growth meaning they did not have the physical structures to a significant extent that contained the aromatic hydrocarbons which produce odor." Not only is an attorney not qualified to make those observations, but the language "to a significant extent" suggests that the plants did have some physical structures that contained aromatic hydrocarbons which produce odor.

Further, "[w]here reliable independent evidence indicates that an event did occur, an *ex post* assessment that the event is 'unlikely' . . . is almost without probative weight." (*U.S. v. Mueller* (5th Cir. 1990) 902 F.2d 336, 343 [court rejected an expert's opinion that an odor of methamphetamine was "unlikely" to have been detected].) Accordingly, while probable cause for a search cannot be supported by the results of the search (*People v. Brown* (1955) 45 Cal.2d 640, 643 [290 P.2d 528]), there is no reason why the results of the search cannot support the truthfulness of the statements made in a search warrant affidavit by an affiant whose credibility is under attack. (See *People v. Box, supra,* 14 Cal.App.4th at pp. 185-186.) For instance, if the affiant had stated that strong marijuana odors could be smelled, and no marijuana had been found in defendant's house, defendant could reasonably argue that the statements had to be false. Conversely, where an affiant states that strong marijuana odors could be smelled, and there are rows and rows of adult marijuana plants in the house, the latter would tend to corroborate the truthfulness of the former. In short, while the fruits of a search cannot transform an unlawful search into a lawful one

(since "[i]n law it is good or bad when it starts and does not change character from its success" (*United States v. Di Re* (1948) 332 U.S. 581, 595 [68 S.Ct. 222, 229, 92 L.Ed. 210]))[3], no violence is done to that principle where the results of the search are used to confirm the veracity of that which was already sufficient to establish the probable cause for the search. Just as the truth of the representations in a search warrant affidavit can be attacked with newly acquired evidence (such as subsequent interviews with witnesses) so, too, can it be corroborated with such evidence.

In *People v. Box, supra,* 14 Cal.App.4th at pages 185-186, the Court of Appeal rejected as unreliable for purposes of a *Franks* hearing, the contrary deposition testimony of an informant, upon whose earlier statements a warrant application relied, because the informant's earlier statements were subsequently corroborated in part by the results of the search: "In *U.S. v. Johns* [(9th Cir. 1988) 851 F.2d 1131], the court held the defendant was entitled to a *Franks* hearing. There, the defendant presented affidavits from expert chemists who said it was impossible that affiant had smelled the odor he said he smelled near a storage locker. In that case, however, the officer's claim was not corroborated by a significant body of evidence, as it is here, *and the discovered materials themselves added an element of corroboration or reliability to the experts' sworn statements.* [¶] . . . In the present case, . . . the high level of external corroboration of [the informer's] statements in the search warrant affidavit, and the complete absence of motivation for the police to choose such an unreliable individual if they were fabricating an informer, lead us to conclude that [the informer's] deposition testimony did not constitute a sufficient showing of deliberate or reckless police misconduct to require an evidentiary hearing pursuant to *Franks*." (14 Cal.App.4th at pp. 185-186, italics added.)

Here, too, the revelation that significant marijuana cultivation was taking place in defendant's residence—enough to elicit recent complaints about an odor from one or two neighbors—corroborates the officers' assertion that an odor was emanating from that residence. We note that defendant has been unable to rebut the fact that two neighbors smelled a strong odor coming from somewhere in the vicinity of his residence.

Indeed, it is hard to believe that the officers fabricated all the evidence about marijuana odors coming from defendant's residence, but just happened

---

[3]Although irrelevant to this analysis, we note that there is a split among the circuits whether *United States v. Di Re, supra*, U.S. 581, cited above, was impliedly disapproved on a different point in *Elkins v. United States* (1960) 364 U.S. 206 [80 S.Ct. 1437, 4 L.Ed.2d 1669]. (Compare *U.S. v. Walker* (5th Cir. 1992) 960 F.2d 409, 416 with *U.S. v. Mota* (9th Cir. 1993) 982 F.2d 1384, 1387.)

by chance to find 18 adult plants and 28 saplings growing in defendant's basement. The results of the search help corroborate the officers' statements that there was a distinctive odor emanating from defendant's residence. The defendant's carefully worded declaration about the absence of *strong* odors, or an attorney's explanation of the effect of the weather on aromatic hydrocarbons cannot suggest otherwise.

(3)-(5)*

. . . . . . . . . . . . . . . . . . . . . . . . . .

(6)

We need not determine whether the affidavit, with any false statements excised, is sufficient to establish probable cause for the issuance of the warrant since we conclude that defendant has failed to make a substantial showing that any of the statements were deliberately false or made with reckless disregard for the truth.

### DISPOSITION

The judgment is affirmed.

Scotland, P. J., and Nicholson, J., concurred.

On December 28, 1999, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 1, 2000. Mosk, J., and Werdergar, J., were of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 264.