Filed 7/14/14  P. v. Liang CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>XUE BIN LIANG,<br><br>        Defendant and Appellant. | A138532<br><br>(San Mateo County<br>Super. Ct. No. SC070823A) |

Xue Bin Liang (Liang) was convicted and sentenced after entering no contest pleas to charges that he cultivated marijuana and possessed marijuana for sale.  (Health & Saf. Code, §§ 11358, 11359.)  Before his no contest pleas, the trial court had denied his motion to suppress evidence obtained by a search warrant, on the ground that Liang's prior counsel had filed a suppression motion previously.  Liang appealed from that ruling, and the trial court on remand found that Liang's prior counsel was not ineffective for failing to challenge the search warrant in the original motion.  Liang now contends this was error.  We will affirm.

## I.  FACTS AND PROCEDURAL HISTORY

Liang was charged with cultivating marijuana (Health & Saf. Code, § 11358), possessing marijuana for sale (Health & Saf. Code, § 11359), and stealing utility services from "PG&E" (Pen. Code, § 498, subd. (d)).  The events leading up to these

1

charges, as well as Liang's motions to suppress evidence and his no contest pleas, were summarized in our unpublished opinion in a prior appeal (case No. A134581). We first revisit those matters for context, and then describe the ensuing proceedings.

    A.  Background From Prior Appeal

        1.  Facts

In the prior appeal, we summarized the facts as follows.

"On December 18, 2008, Daly City police responded to a residence at 365 Frankfort Street at the request of the owner, Holly Wong (Wong). Police spoke with Wong inside the garage to the residence, and she told them she had been trying for over a month to contact the tenants who leased the residence from her. She asked the officers to enter the residence to ensure that no one was inside.

"Wong said that, in an attempt to contact the tenants, she and her father had entered the residence earlier that day through an unlocked door in the garage. She smelled marijuana inside the residence, and her father told her to call the police, as he believed there was marijuana growing there. While speaking with Wong, one officer observed 'multiple electrical wires coming out of and going through holes in the sheetrock inside the garage' and a plastic bag containing green plant material she believed to be marijuana. The officers smelled an odor of marijuana coming from the residence.

"As Wong did not have a key to the residence, [fn. omitted] Daly City police called the Daly City Fire Department to open a door. Daly City police entered the residence and found 'numerous marijuana plants growing inside, with high power lights and fans.' They did not find anyone inside the residence.

"Daly City police exited the residence and called the San Mateo County Narcotics Task Force, which responded to the residence. Special agent Michael Price spoke with Wong, who said she had leased the property to an older Asian male, Yiu Cho Chung, in July 2006, for 24 months. Wong stated that she was now trying to sell the property and had been calling Chung since early November 2008, to ask him to vacate. She said she

had not been able to reach him, and he had not returned her calls. Agent Price noted that all of the front windows of the residence were covered, and he observed condensation on two windows. From the sidewalk, he could hear a loud humming noise coming from inside the residence. He found these conditions consistent with use of the residence for the cultivation of marijuana.

"Agent Price began preparing an application for a search warrant and instructed other San Mateo County Narcotics Task Force agents to monitor the house. Agent Koti Fakava (Fakava) saw defendant drive by the residence in a white Lexus, slowing as he passed. Agent Pat Moran (Moran) saw defendant enter the residence, and shortly thereafter, Fakava saw defendant walk out of the garage, carrying a garage door opener. Fakava and Moran detained appellant in handcuffs and did a pat search, which produced a cell phone, several hundred dollars in cash, and a set of keys from his pants pocket. They also searched defendant's car.

"Soon thereafter, agents obtained a search warrant for the residence. They seized over 200 marijuana plants in various stages of growth, as well as grow lights and other equipment used in growing marijuana."

### 2. Suppression Motions and No Contest Pleas

In May 2010, Liang moved to suppress evidence seized from him at the time of his detention by officers Fakava and Moran, on the ground that the initial contact and subsequent detention and arrest were not supported by reasonable suspicion or probable cause, and the search of his person was conducted without a warrant. (See Pen. Code, § 1538.5.) Defense counsel confirmed that Liang was challenging only his initial detention and the search of his person.

The court denied the motion in June 2010.

In November 2011, with new counsel, Liang filed a second motion to suppress. This motion sought to suppress evidence seized pursuant to the search warrant (and evidence thereafter obtained), on the ground that law enforcement initially entered the residence without a warrant and without justification for a warrantless entry, and the

3

search warrant relied entirely on observations gleaned during that illegal entry. Liang maintained that this second suppression motion should be considered, because the first motion to suppress had not permitted a full determination of his Fourth Amendment rights due to the ineffective assistance of his prior counsel, who failed to raise the search warrant issue.

The trial court denied the second motion to suppress, concluding it lacked jurisdiction to entertain a second suppression motion. The court did not decide the merits of the second motion or the alleged incompetence of prior counsel.

In December 2011, Liang entered a plea of no contest to the charges of cultivating marijuana and possessing marijuana for sale. The court suspended imposition of sentence and placed Liang on probation for three years.

B. Prior Appeal

Liang appealed from the judgment, challenging the validity of his plea based on the denial of his second motion to suppress (case No. A134581).

In October 2012, we concluded that the trial court had jurisdiction to hear Liang's second motion to suppress, at least to determine whether prior counsel was ineffective in failing to raise the issues in the original suppression motion. (*People v. Liang* (Oct. 18, 2012, A134581) 2012 Cal.App. Unpub. Lexis 7529, at pp. *15-17 [nonpub. opn.].) The matter was therefore remanded to the trial court "for a determination of whether [Liang] has shown prejudicial ineffective assistance of counsel in connection with former counsel's filing and litigation of his first motion to suppress evidence, which he claims deprived him of a full determination of the Fourth Amendment issues impacting his case. If so, the superior court shall hear and decide his second motion to suppress. [Fn. omitted.] If the court denies the motion, defendant's conviction shall remain in place. If the court grants the motion, it shall vacate defendant's conviction, permit him to withdraw his plea, and conduct such further proceedings as it deems appropriate. [Citations.]"

4

We explained Liang's burden on remand as follows: "To establish that the alleged ineffective assistance of counsel was prejudicial, defendant must show his first motion would have been successful. (*People v. Wharton* (1991) 53 Cal.3d 522, 576 [' "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excluded evidence in order to demonstrate actual prejudice" '], quoting *Kimmelman v. Morrison* (1986) 477 U.S. 365, 375.) To make such a showing, defendant must overcome the Attorney General's contention that the search warrant affidavit is sufficient without the contested observations of the officers. (*People v. Weiss* (1999) 20 Cal.4th 1073, 1081 [court 'must excise all tainted information but then must uphold the warrant if the remaining information establishes probable cause'].)"

C. Proceedings on Remand

At a hearing on March 5, 2013, the court stated the issue as follows: "If we excised all the stuff resulting from the initial entry by the officers, was there, nevertheless, probable cause that supported the [issuance of] the warrant." The parties agree that the following information remained in the affidavit, after excising the contested observations by law enforcement: (1) Wong entered the residence in an attempt to contact the tenants, and she smelled marijuana inside the residence; and (2) Agent Price observed that all of the front windows of the residence were covered, saw there was condensation on two windows on the third story, and heard a loud humming noise coming from inside the residence.[1]

---

[1]  Accordingly, the court did not consider the observations of Daly City police in the garage (electrical wires passing through holes in the Sheetrock, a plastic bag containing green plant material, and the smell of marijuana coming from the residence), which police obtained after Wong reopened the garage door upon their arrival. Nor did the court consider the observations of the police inside the residence (numerous marijuana plants and high-powered lights and fans), obtained after the police gained entry to that location with the help of the fire department.

In greater detail, the affidavit set forth these matters as follows. Sergeant Michael Price, Special Agent Supervisor for the San Mateo County Narcotics Task Force, asserted that Sergeant McCarthy and other officers of the Daly City Police Department responded to a "call for service" from Wong, the owner and landlord of a residence located at 365 Frankfort Street, Daly City, who had not been able to contact her tenant for over a month. Wong told police that, in an attempt to contact her tenant, Wong and her father had entered the garage that morning with a remote-controlled door opener and proceeded through a door that led to a stairway going to the upstairs living area of the residence. Wong told police that she smelled marijuana coming from the residence, and that her father said he believed marijuana was being grown inside the house and she should call the police.

Agent Price met with Wong in front of the house. Wong gave Price the same information she had provided to the other officers, including that once she started walking up the stairs toward the residence, "she smelled what she believed to be marijuana coming from the residence." Wong also explained that she had been calling the tenant's telephone number daily for about a month to contact him to vacate the property for an upcoming sale, but the tenant did not answer or return her calls, despite her messages.

While standing outside the house, Agent Price "could see that all of the windows to the front of the residence were covered by the closed window coverings attached to the inside of the windows." He also saw that "[t]he two windows on the third story had condensation on them." In addition, "[f]rom the public sidewalk in front of the residence in front of the foyer leading to the stairway[,] [he] could hear a loud humming noise coming from the interior of the residence." According to Price, based on his training and experience (which was set forth in the affidavit), each of these three circumstances was consistent with indoor marijuana cultivation: (1) marijuana cultivators will keep windows covered to control how much light the marijuana plants receive and to prevent the plants from being detected by the public; (2) indoor marijuana cultivation produces a great deal of humidity, which causes condensation

6

inside the residence; and (3) people involved with indoor cultivation of marijuana use high-powered electric fans to force oxygen and hot air out of the growing rooms and improve growing conditions for the plants.

At the hearing, Liang argued that the information did not amount to probable cause: Wong's "expertise" on smelling marijuana was unknown, nearly every residence in this country has a window covering, the condensation on the third floor windows could have been "caused by cooking," and, as to the loud humming noise coming from the residence, Agent Price "is free to take a fact and put his spin on it."

The court found that Liang failed to establish that his prior counsel was ineffective for not challenging the search warrant. The court explained: "[H]aving reviewed the transcripts and in particular the affidavit in support of . . . the search warrant, the Court concludes that the warrant was validly issued; that the entries and seizures pursuant to the warrant were valid and did not violate the defendant's Fourth Amendment rights. [¶] And, accordingly, the Court concludes that the claim of ineffective assistance of counsel is not meritorious because had the additional Fourth Amendment points been raised at the first motion to suppress, that the motion to suppress would have been denied, in any case."

This appeal followed.

## II.  DISCUSSION

Liang contends the court erred in finding that his prior attorney did not provide ineffective assistance of counsel in failing to include in his suppression motion the theories advanced in his new attorney's subsequent suppression motion. Specifically, he argues, "Because the search warrant affidavit, stripped of the observations obtained as a result of the warrantless and unlawful entries, is unsupported by probable cause, the

7

court's determination that counsel was not ineffective for failing to challenge the search is erroneous."[2]

A. Law

The burden of proving ineffective assistance of counsel is on the defendant. (*People v. Pope* (1979) 23 Cal.3d 412, 425.) To establish constitutionally inadequate representation, the defendant must show that (1) counsel's representation was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's deficient representation subjected the defense to prejudice, in that there is a reasonable probability that but for counsel's failings the result would have been more favorable. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-696.)

Where, as here, the ineffectiveness of counsel is based on counsel's failure to litigate a Fourth Amendment claim, the defendant must establish that his Fourth Amendment claim was meritorious. (*Kimmelman v. Morrison* (1986) 477 U.S. 365, 375.) That is, as we stated in our opinion in the previous appeal, Liang had to show that the arguments his prior counsel allegedly should have included in his first suppression motion (and which his subsequent counsel did assert in his second suppression motion) would have been successful.

The success of a challenge to the search warrant would have turned on whether the allegations in the search warrant affidavit presented a fair probability that contraband or evidence of a crime would be found in the residence. In deciding whether to issue a search warrant, the magistrate's task "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit

---

[2]    In the trial court, the prosecutor also argued that Liang lacked standing and the police officers' initial entry was lawful. The trial court found that, assuming Liang had standing and the initial entry was unlawful, there was nevertheless ample probable cause to uphold the warrant, and therefore counsel was not ineffective. Liang addresses the issues of standing and the lawfulness of the initial entry in his opening brief on appeal. Because we agree there was probable cause to uphold the search warrant without the contested observations of the officers, and a challenge to the search warrant would not have been successful, we need not and do not address the standing issue or the lawfulness of the initial entry.

8

before him, including the " 'veracity' " and " 'basis of knowledge' " of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (*Illinois v. Gates* (1983) 462 U.S. 213, 238-239 (*Gates*); see *People v. French* (2011) 201 Cal.App.4th 1307, 1315 (*French*).) We conduct an independent review to determine whether the magistrate had a "substantial basis for . . . [concluding]" that probable cause existed. (*Gates, supra,* 462 U.S. at p. 239; *French, supra,* 201 Cal.App.4th at p. 1315; *People v. Camarella* (1991) 54 Cal.3d 592, 601-602.)

B. Application

After eliminating the contested observations of law enforcement, the affidavit provided a substantial basis for concluding that probable cause existed for the issuance of the search warrant.

Wong told police that she had been unable to contact her tenant for over a month and that, upon approaching the living area of the residence, she "smelled marijuana" and believed marijuana was being grown in the premises. Wong's veracity was unchallenged; furthermore, she was not an anonymous tipster or confidential informant, but a private citizen who identified herself, explained the situation in some detail, and reported to two separate police officers what she had witnessed firsthand. (See *People v. Ramey* (1976) 16 Cal.3d 263, 268-269 ["It may therefore be stated as a general proposition that private citizens who are witnesses to or victims of a criminal act, absent some circumstance that would cast doubt upon their information, should be considered reliable"]; *People v. Terrones* (1989) 212 Cal.App.3d 139, 147-148 [reliability of citizen informant enhanced if report is from personal observation].)

In addition, Agent Price saw that all of the front windows of the residence were covered, there was condensation on two of the windows on the third story, and there was a loud humming noise coming from the residence that could be heard from the sidewalk. Based on his training and experience, Price recognized these to be signs of indoor marijuana cultivation. Price's veracity and expertise were not challenged either;

indeed, Liang's counsel recognized that Price had greater credibility than an ordinary officer.

Agent Price's observations, combined with Wong's repeated statement that she smelled marijuana coming from the residence, suggested "a fair probability that contraband or evidence of a crime [would] be found" in the residence. (*Gates*, *supra*, 462 U.S. at p. 238; see *People v. Gotfried* (2003) 107 Cal.App.4th 254, 263-264 (*Gotfried*) [informant's information, even if unverified, may establish probable cause if corroborated by law enforcement's discovery of other indications of criminal activity].) Accordingly, there was a substantial basis for concluding there was probable cause to issue the search warrant, and a motion to suppress would have been unsuccessful. Prior counsel therefore did not provide prejudicial ineffective assistance.

### C. Liang's Arguments

Liang's arguments to the contrary are unpersuasive. He argues primarily that we should not consider Wong's statement that she smelled marijuana, because the affidavit did not contain information from which the magistrate could find she was qualified to recognize the odor. He urges that the aroma of fresh marijuana can establish probable cause to believe the contraband exists in the place to be searched only "if the magistrate 'finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance.' " (*People v. Benjamin* (1999) 77 Cal.App.4th 264, 273 (*Benjamin*).)

The cases on which Liang relies, however, are distinguishable. In *People v. Cook* (1975) 13 Cal.3d 663, the court ruled that the "strong aroma of fresh marijuana" *can* establish probable cause to believe contraband is present. (*Id.* at p. 668.) Although the court noted that the officer detecting the odor had asserted "a long familiarity with the smell of marijuana," the court did not opine that this express statement of familiarity was necessary. (*Id.* at p. 667.) And even if it had, *Cook* would be distinguishable because, in that case, the odor of marijuana was the only basis for probable cause to search the defendant's vehicle; here, not only did Wong assert that

she smelled marijuana, the likely presence of the contraband was corroborated by the observations of Agent Price.

In *People v. Stegman* (1985) 164 Cal.App.3d 936, a private citizen informed police that he smelled ether coming from a neighbor's house. Police eventually obtained a warrant to search the defendant's residence. The court rejected the defendant's contention that the informant's statement failed to constitute probable cause for the warrant. As Liang notes, part of the court's reasoning was that the responding officers had detected the odor too, thus providing corroboration of the informant's claim. (*Id*. at pp. 940-942.) But *Stegman* is not on point, because at issue there was the odor of ether, not the aroma of marijuana. Moreover, *Stegman* did not hold that the search warrant affidavit would have been *in*sufficient *without* the corroboration provided by the officers. (*Id*. at p. 942.) And even if Wong's detection of marijuana was not corroborated by officers smelling marijuana, it was corroborated by Agent Price's observations of other indicia of marijuana cultivation inside the residence.[3]

Liang's reliance on *United States v. DeLeon* (9th Cir. 1992) 979 F.2d 761 is also misplaced. There, the appellate court found there was no probable cause to issue a search warrant based solely on an informant's statement that he smelled marijuana growing inside a shop building, because there was "no finding that the [informant] was qualified to recognize the odor of growing marijuana." (*Id*. at pp. 764-765.) The court held: "[A] warrant cannot be based on the claim of an untrained or inexperienced person to have smelled growing plants which have no commonly recognized odor. [Citations.] Nothing in this record suggests that [the informant] is qualified to detect the odor of the growing plants, save his claim that he had been around an unspecified form of marijuana some years prior. Therefore, we find that no probable cause

---

[3]    Actually, officers *did* confirm the aroma of marijuana when they were in Liang's garage. But this observation was not considered by the trial court, on the assumption that the police entry into the garage was unlawful. We do not consider it either.

11

supported the warrant *in this case*." (*Id*. at p. 765, fn. omitted, italics added.) The footnote in this passage, however, is telling. It reads, "The unrebutted expert testimony in the record is that detection of marijuana plant aroma requires a 'trained person.' " (*Id*. at p. 765, fn. 1.) In the matter before us, there was no such testimony. Moreover, *DeLeon* is distinguishable because the sole basis for the issuance of the warrant was the report of a citizen who claimed to have smelled marijuana; here, the report by Wong was accompanied by complementary observations of law enforcement.

Also distinguishable is *Hervey v. Estes* (9th Cir. 1995) 65 F.3d 784. There, the court concluded that an officer's statement that he "recognized the odors that are consistent with the manufacturing of [m]ethamphetamine" was insufficient to establish probable cause without information regarding the identity of those odors and the officer's training to recognize them. (*Id*. at pp. 786, 790.) Here, by contrast, the odor was identified specifically (marijuana) and was not as esoteric as "odors that are consistent with the manufacturing of [m]ethamphetamine."

In the matter before us, we do not and need not decide whether Wong's statement that she smelled marijuana would *in itself* be sufficient to constitute probable cause for the search warrant. Unverified information from an untested informant may establish probable cause if corroborated by other facts or sources. (See *Gotfried, supra,* 107 Cal.App.4th at p. 263.) " '[T]he corroboration is sufficient if police investigation has uncovered probative indications of criminal activity along the lines suggested by the informant. [Citation.] Even observations of seemingly innocent activity provide sufficient corroboration if the anonymous tip casts the activity in a suspicious light. [Citations.]' " (*Id*. at p. 264; see *People v. Stanley* (1999) 72 Cal.App.4th 1547, 1555 [probable cause existed for warrant to search residence for marijuana cultivation, based in part on a police officer's opinion, because the "opinions of an experienced officer may legitimately be considered by the magistrate in making the probable cause determination"].) In the totality of the circumstances, including Agent Price's observations and opinion as well as Wong's statement, the affidavit provided a substantial basis for finding probable cause.

12

Liang's other arguments are also unpersuasive. Liang contends the affidavit casts doubt on Wong's reliability and her motives for informing the police, since it suggests that Wong wanted to remove Liang from the premises so she could sell the property. In addition, Liang argues, the affidavit does not disclose whether police checked on Wong's credibility or verified if Wong was indeed the landlord, as opposed to a "vindictive partner of the tenants bent on revenge." Nor does the affidavit indicate whether Agent Price attempted to obtain utility records to determine the level of electricity consumption at the residence. But none of this precludes a finding of probable cause. Even if some credible argument might be made that there was no marijuana cultivation occurring inside the residence, the facts set forth in the affidavit were sufficient to suggest a fair probability that there was.

Liang next offers his own spin on the facts Agent Price set forth in the affidavit. He argues that residents may use window coverings to maintain privacy for legitimate reasons or to protect their furnishings from the sun; condensation on the third story windows could be due to cooking or a shower; and the loud humming noise coming from inside the residence could be attributed to the operation of machinery other than the high-powered fans used to cultivate marijuana. The question, however, is not whether the matters observed by Price, taken individually, might have some innocent explanation; the question is whether, taking all these matters in their *totality*, they suggested "a fair probability that contraband or evidence of a crime will be found" in the residence. (*Gates*, *supra*, 462 U.S. at p. 238.) For the reasons stated *ante*, they did.

Lastly, Liang points to two cases in which search warrants were upheld based on affidavits which, he claims, contained more supporting facts than the affidavit in this case. (*People v. Deutsch* (1996) 44 Cal.App.4th 1224, 1232-1233 [informant told police that defendant gave him marijuana, he detected a " 'heavy odor of marijuana' " inside the defendant's house, and he saw doorways in the living room area blocked by bedsheets, and officers had obtained evidence that electrical usage at the house was up to seven times the baseline]; *Benjamin*, *supra*, 77 Cal.App.4th at pp. 268- 269 [two neighbors complained of a strong odor of marijuana coming from a house, police

13

officers smelled marijuana as they approached the house, and electrical usage was two times that of similar locations].)  However, neither *Deutsch* nor *Benjamin* held that any lesser amount of evidence would be inadequate to establish probable cause.[4]  In any event, it was not necessary for the affidavit in this case to be identical to the affidavit in *Deutsch* or *Benjamin*; as explained *ante*, there was a fair probability that contraband or evidence of a crime would be found in the residence.

In the final analysis, Liang fails to establish that his prior counsel provided prejudicial ineffective assistance in failing to challenge the search warrant.  The trial court did not err.[5]

III.  <u>DISPOSITION</u>

The judgment is affirmed.

_____

NEEDHAM, J.

We concur.

_____

SIMONS, P. J.

_____

BRUINIERS, J.

---

[4]     Indeed, *Benjamin* did not even address the issue of the sufficiency of an affidavit to establish probable cause, but whether the defendant had established that the affidavit contained intentional falsehoods.  (*Benjamin, supra*, 77 Cal.App.4th at pp. 267-268.)

[5]     Looking at it another way, the trial court effectively reached the merits of the second suppression motion in concluding that Liang would not have prevailed if counsel had challenged the search warrant initially.  Since the court considered the merits of the search warrant issue, there was no prejudice to counsel's omitting it from the first motion.